# IN THE UNITED STAT COURIERES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN JEMISON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.:**  22-1322 |
| | : | |
| **STAT COURIER, INC., d/b/a, ATM** | : | |
| **AMERICAN TRASNPORTATION** | : | |
| **MANAGEMENT & DESIGN,  AARON** | : | **COMPLAINT IN CIVIL ACTION** |
| **TOMCZAK, ARON PUPI and BRUCE** | : | |
| **TOMCZAK, individually,** | : | |
| | | |
| **Defendants.** | | |

Filed on Behalf of Plaintiff:
Steven Jemison

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:      (412) 545-3015
Fax No.:        (412) 540-3399
E-mail:         jward@jpward.com

IN THE UNITED STAT COURIERES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN JEMISON,       :
               :
   Plaintiff,      :
               :
  v.          :  Case No.:
               :
STAT COURIER, INC., d/b/a, ATM  :
AMERICAN TRASNPORTATION  :
MANAGEMENT & DESIGN, AARON  :  COMPLAINT IN CIVIL ACTION
TOMCZAK, BRUCE TOMCZAK, ARON :
PUPI, individually, jointly and severally, :

   Defendants.

## COMPLAINT IN CIVIL ACTION

  AND NOW, comes Plaintiff, Steven Jemison, by and through the undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendant, Stat Courier, Inc., d/b/a ATM American Transportation Management & Design, and Aaron Tomczak, of which the following is a statement:

## PARTIES

  1.  Plaintiff, Steven Jemison (hereinafter "Mr. Jemison" or "Plaintiff"), is an adult individual who currently resides at 6 Rosamond St, McKees Rocks, Pennsylvania 15136

  2.  Defendant, Stat Courier, Inc. (hereinafter "Stat Courier") is a Pennsylvania business located at 6 River Rd., McKees Rocks, PA, 15136. Stat Courier, Inc. has registered its trademark "ATM American Transportation Management & Design" with the Commonwelth.

  3.  Defendant, Bruce Tomczak is an adult individual residing at 517 Burkes Drive, Coraopolis, Pennsylvania, 15108.

2

4. Defendant, Aaron Tomczak, is an adult individual who currently resides at 302 Indian Ridge Drive, Coraopolis, Pennsylvania, 15108.

5. Defendant, Aron Pupi is an adult individual residing at 112 Muirfield Place, Beaver, Pennsylvania, 15009.

## JURISDICTION AND VENUE

6. Jurisdiction is proper as Plaintiff brings this lawsuit under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq*., the Wage Payment and Collection Law ("WPCL") 43 P.S. §260.1 *et seq*., the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat Courier. Ann. §333.101, *et seq.,* Common Law Wrongful Termination in Violation of the Federal Motor Vehicle Safety Regulations as Adopted by the Pennsylvania Administrative Code Title 67, Transportation and the Surface Transportation Assistance Act (hereinafter "STAA"), 49 U.S.C. § 31105.

7. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.

8. A substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

9. Stat Courier is a transportation company founded in 1994 that hauls general freight.

10. Stat Courier published an employment advertisement on Indeed for CDL truck drivers. The rate of compensation for the truck driver position was $18.50 per hour.

11. On or about November 4, 2021, Mr. Jemison initiated employment with Stat Courier as a CDL truck driver.

## A. FAILURE TO PAY AGREED UPON WAGE

12.    When Plaintiff initiated his employment with Defendant the agreed upon rate of compensation was $18.50 per hour as was advertised in the Indeed advertisement.

13.    A couple months into his employment, Plaintiff realized he was only being compensated at $18.00 per hour instead of the agreed upon amount of $18.50.

14.    Plaintiff approached his supervisor, Aron Pupi to inquire about the pay discrepancy of fifty cents.

15.    Plaintiff asked Aron Pupi, "why is my paycheck for $18.00 per hour and not $18.50 per hour?"

16.    Aron Pupi told Plaintiff "I don't remember telling you that!"  Aron Pupi denied that he agreed to pay Plaintiff the $18.50 per hour.  However, the pay rate of $18.50 was agreed to on Plaintiff's second day of employment.

17.    A couple of days later, Aron Pupi approached Mr. Jemison and told him that his pay was corrected to reflect the $18.50 agreed upon wage.  At that time, Aron Pupi cautioned Plaintiff that he was not to disclose his rate to any of his fellow drivers.

18.    Mr. Jemison requested that Aron Pupi produce all of his paystubs from the beginning of his employment until present.

19.    Aron Pupi replied to Plaintiff, "I will get you your pay stubs."

20.    Mr. Jemison would ask Aron Pupi at least once a week about his paystubs. Aron Pupi continued to tell Mr. Jemison he was working on getting them.

21.    Defendants never provided Plaintiff's pay stubs, despite repeated demand.

## B. FAILURE TO PAY OVERTIME TO THE COLLECTIVE CLASS

22. According to Mr. Jemison's pay stubs, received in September of 2022, Mr. Jemison worked at least 16.6 hours in overtime between November 2, 2021 and May 1, 2022.

23. Mr. Jemison and the other drivers would discuss the lack of overtime pay amongst themselves and would frequently make complaints to management about the lack of overtime compensation.

24. Stat Courier failed to pay Mr. Jemison and the collective class members overtime compensation (1.5 x base pay) for the entirety of his employment.

25. Various representatives of Stat Courier told Mr. Jemison and the collective class members that they were exempt from the FLSA overtime provisions pursuant to the Federal Motor Carrier Safety Act.

26. Specifically, Aron Pupi told Mr. Jemison, "We don't pay overtime. So, if you work overtime, you will receive only base pay."

27. During each week of employment, Mr. Jemison and collective class members operated a twenty-six-foot box truck, cargo vans, and sprinter vans for Stat Courier.

28. Mr. Jemison and the collective class members would routinely cross state lines.

29. Mr. Jemison and the collective class, during each week of employment, routinely operated and performed safety checks and maintenance for vehicles that did not exceed 10,000 pounds, unladen.

30. Mr. Jemison and the collective class, during each week of employment, did not operate or perform duties on vehicles that were designed or used to transport more than 8 passengers, including the driver.

31.     Mr. Jemison and the collective class, during each week of employment, did not transport hazardous materials requiring visible placarding.

32.     Thus, Mr. Jemison and the collective class, for each week of employment, were not subject to the FMCSA overtime exemption, per Section 13(b)(1).

### C.  Mr. JEMISON REPORTED FMCSA SAFETY VIOLATIONS.

33.     Before a truck driver begins to drive a route, the truck driver must perform a pre-trip inspection of the truck. A pre-trip inspection is necessary to ensure that the truck meets all the safety requirements.

34.     Stat Courier was fully aware its trucks did not meet DOT's safety standards, but they still allowed their CDL drivers to utilize the trucks. Stat Courier placed its drivers and the public at risk.

35.     Mr. Jemison reported safety concerns and DOT violations to the attention of Dispatch Assistant Manager, Becky LNU ("Ms. Becky") and Mr. Tomczak numerous times throughout his employment, including, holes in the floors of trucks, bald tires, and vehicles that could not pass inspection.

36.     On or about May 4, 2022, Mr. Jemison was contacted by Stat Courier because they needed a truck driver to take a route the following day.

37.     Mr. Jemison noticed, during his pre-trip inspection, the truck did not  meet the safety requirements . He refused to drive the truck until it had the necessary repairs.

38.     Mr. Jemison immediately brought this to the attention of Aron Pupi. He assured Mr. Jemison that the truck would go right in the shop for repairs.

39.     Upon information and belief, Aron Pupi did not place the truck in the shop for repairs.  Mr. Jemison witnessed another employee utilize the same truck to make his delivery.

40. Stat Courier continued to violate DOT's public policy and provisions related to motor vehicle safety even after being made aware of the poor conditions of its trucks.

### D. RETALIATORY TERMINATION

41. On or about May 5, 2022, Mr. Jemison drove his route and returned to the Stat Courier warehouse in or around 1:30 p.m.

42. Mr. Jemison, for the third time that week, asked Aron Pupi for his paystubs.

43. Aron Pupi told Mr. Jemison that he "complained too much" about the safety of the trucks, lack of overtime pay, and lack of paystubs.

44. Mr. Jemison replied to Aron Pupi and Ms. Becky that he was only making them aware of the unsafe conditions because he was required to do so under federal and state law.

45. Aron Pupi yelled angrily at Mr. Jemison "Do you not trust me?" Mr. Jemison replied, "Not really." This caused Aron Pupi to become visibly and audibly infuriated.

46. Aron Pupi became furious and yelled at Plaintiff, "Are you f***ing kidding me! You're fired!"

47. Upon information and belief, both Aaron and Bruce Tomczak were aware of Mr. Pupi's actions and ratified the same.

48. Mr. Jemison was unlawfully terminated as a direct and proximate result of his complaints regarding failure to pay the agreed upon rate, failure to pay overtime, concerted activities, and failure to rectify safety hazards and violations of state and federal laws.

### COUNT I
**FAILURE TO PAY OVERTIME TO THE COLLECTIVE CLASS
IN VIOLATION OF THE FLSA
(Plaintiff on behalf of the Collective Class vs. Defendants)
Jointly and Severally**

49.     Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

50.     Under the Fair Labor Standards Act (hereinafter "FLSA"), an employer is prohibited from employing an employee for a workweek "longer than forty hours unless such employee receives compensation" for hours worked more than the specified forty hours. 29 U.S.C.S. §207(a)(1).  This rate must be at a rate "not less than one and one-half times the regular rate at which [the employee] is employed." *Id*.

51.     When a plaintiff seeks to establish an overtime claim under the FLSA, he must "sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours. *Rosario v. First Student Mgmt., LLC*, 2016 U.S. Dist. LEXIS 108172 at *20 (E.D. Pa. 2016).  The plaintiff is also required to "connect the dots between bare allegations of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly scheduled shifts," so that "allegations concerning a typical forty-hour work week include an assertion that the employee worked additional hours during such a week." *Id.*

52.     Plaintiff is an "employee" as defined by 29 U.S.C.S §203(e)(1) of the FLSA.

53.     Defendants are "employer[s]" as defined by 29 U.S.C.S §203(d) of the FLSA.

54.     The FLSA imposes individual liability, jointly and severally, upon Bruce Tomzcak and Aaron Tomzcak because they meet the definition of "employer." 29 U.S.C.S §203(d).  Indeed, Bruce Tomzcak is the sole owner and is the ultimate authority with respect to operations.  Aaron Tomzcak was second in command and the direct supervisor to Plaintiff.

55.     Additionally, Aron Pupi , Bruce Tomzcak, and Aaron Tomzcak are corporate officers and executives. Thus, he may be held individually liable pursuant to the well-recognized Pennsylvania common law 'participation theory.'

56.     Mr. Jemison was not overtime exempt, as set forth hereinabove.

57.     Defendants required Plaintiff to regularly work more than forty hours per week.

58.     Plaintiff worked five to eight hours of overtime each week of his employment.

59.     The actions of Defendants were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

60.     As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Steven Jemison, on behalf of the Proposed Collective Class, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendants, jointly and severally including back pay, pre-judgment interest, any available compensatory, punitive, or liquidated damages, costs, attorney fees, and such other relief as deemed just and proper.

## COUNT II
## RETALIATORY TERMINATION / WRONGFUL TERMINATION
## IN VILATION OF THE FLSA
## 29 U.S.C. § 215(a)(3)
## (Plaintiff vs. Defendants)
## Jointly and Severally

61.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

62.     The retaliation provision of the FLSA states, "[I]t shall be unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] or related to this chapter, or has testified or is about to testify in any such proceeding …." 29 U.S.C. § 215(a)(3).

63.     To meet the elements for retaliatory discrimination under the FLSA, a plaintiff must establish that "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807 (E.D. Pa. 2015).

64.     In *Kasten v. Saint-Gobain Performance Plastics Corp.,* the Supreme Court held that the "[a]nti-retaliation provision of the Fair Labor Standards Act (FLSA) protects oral as well as written complaints of a violation of the Act…" *Kasten v. Saint-Gobain Performance Plastics Corp.,* 131 S. Ct. 1325 (2011).

65.     Moreover, even if the employee's alleged FLSA violations are later found to be inaccurate, the "prohibition against retaliatory discharge is not rendered inapplicable if employer's belief that employee has engaged in protected activities under Act proves to be false." *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987).

66.     Plaintiff engaged in a protective activity when he consistently asked Defendant to produce his paystubs, the agreed upon compensation rate of $18.50, reporting the unsafe box trucks, and the unpaid overtime wages.

67.     Defendants took an adverse employment action against Plaintiff by terminating his employment due to him becoming a liability to the company.

68.     Defendants viewed Plaintiff as a nuisance as a result of his frequent complaints about the lack of overtime compensation and request for his pay stubs so that he might audit his pay.

69.      The actions of Defendants were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

70.     As a direct and proximate result of Defendants tortious conduct, Plaintiff suffered damages, including, but not limited to, lost back pay, front pay, past, present and future emotional distress, humiliation, and economic loss.

WHEREFORE, Plaintiff, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendants, jointly and severally, including back pay, front pay, any other compensatory, punitive, or liquidated damages, costs, attorney fees, and such other relief as deemed just and proper.

### COUNT III
### FAILURE TO PAY OVERTIME AND BASE RATE
### IN VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT
### 43 P.S. § 333.101, *et seq.*
### (Plaintiff vs. All Defendants)

71. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

72.     The Pennsylvania Minimum Wage Act (hereinafter "PMWA") States that overtime pay is required "for hours in excess of forty hours in a workweek. 43 P.S. §333.104(c).  Further, the PMWA requires the same time and a half payments for "all hours worked past 40 in a week." *Ellis v. Edward D. Jones & Co., L.P.,* 527 F. Supp. 2d 439, 452 (W.D. Pa. 2007) (citing 29 U.S.C.S. 207(a), 43 P. S. 333.104(c)).

73.     Because the PMWA parallels the FLSA in "requiring employers to compensate their employees for overtime hours work, and has an identical standard of liability as the FLSA in overtime claims," courts analyze PMWA claims and FLSA claims under the same framework. *Rummel v. Highmark, Inc.*, 2013 U.S. Dist. LEXIS 162757 at *9 (W.D. Pa. 2013) (citing *Alers v. City of Philadelphia,* 919 F. Supp. 2d 528, 557-60 (E.D. Pa. 2013)).

74.     Thus, "plaintiff-employees asserting PMWA violations must substantiate their claims by demonstrating that they performed work for which they were not paid . . . and that the defendant-employer had actual or constructive knowledge of the plaintiff's overtime work." *Alers v. City of Philadelphia*, 919 F. Supp. 2d at 560 (E.D. Pa. 2013).

75.     Plaintiff worked an average of 45-48 hours per week, throughout his employment with Stat Courier.

76.     Defendant's demands required Plaintiff to regularly work more than forty hours per week, a fact of which Bruce and Aaron Tomzcak were fully aware.

77.     Plaintiff worked up to 16.6 hours of overtime since the initiation of his employment.

78.     Stat Courier failed to compensate Plaintiff at a rate "not less than one and one-half times" his base rate of pay for the hours worked per week over forty in violation of 43 P.S. §333.104(c).

79.     Defendants' actions were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

80.     As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages and emotional distress in the past, present and future.

WHEREFORE, Plaintiff, Steven Jemison, respectfully requests this Honorable Court enter judgment in his favor and against Defendant and enter any and all wages due to Plaintiff, in excess of arbitration limits, as well as costs and attorney's fees and liquidated damages pursuant to the Pennsylvania Minimum Wage Act.

### COUNT IV
### BREACH OF CONTRACT
### (Plaintiff vs. Defendant Stat Courier)

81.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

82.     Under Pennsylvania law, a Plaintiff bringing an action for breach of contract must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages." *CoreStat Courieres Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (citing *Gen. Stat Couriere Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Commw. Ct. 1976)).

83.     STAT COURIER advertised on Indeed for CDL truck drivers being compensated at a rate of $18.50 per hour.

84.     Plaintiff applied for and was hired for the position of CDL truck driver by Stat Courier to be compensated at the agreed upon wage of $18.50.

85.     STAT COURIER failed to compensate Plaintiff at the agreed upon wage for the first five months of his employment.

86.     Plaintiff brought the discrepancy in wages to STAT COURIER's attention.

87.     As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages and consequential damages.

WHEREFORE, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, Stat Courier, Inc., including, compensatory damages, consequential damages, expectation damages, costs of suit, and such other relief as deemed just and proper.

**COUNT V**
**FAILURE TO PAY WAGES**
**IN VIOLATION OF THE WPCL**
**(Plaintiff vs. Defendants)**
**Jointly and Severally**

88.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

89.      "Whenever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable. 43 P.S. § 260.5.

90.     Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

91.     Aron Pupi, Bruce Tomzcak and Aaron Tomzcak are corporate officers and executives. Thus, he may be held individually liable pursuant to the well-recognized Pennsylvania common law 'participation theory.'

92.     Although the Pennsylvania WPCL, 43 Pa. C.S. §260.2a does not provide a statutory definition of the term "employee," Pennsylvania Courts have held that "any person in

Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed." *Frank Burns, Inc. v. Interdigital Communs. Corp.*, 704 A.2d 678, 680-681 (Pa. Super. Ct. 1997).

93.     Stat Courier qualifies as "an employer" within the definition of the WPCL 43 Pa. C.S. §260.2a.

94.     Plaintiff was an employee working in the Commonwealth of Pennsylvania.

95.     Stat Courier failed to compensate Plaintiff for the agreed upon wage during the first five months of his employment.

96.     Defendants' actions were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

97.     As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages, emotional distress, anxiety, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendants, jointly and severally, including back pay, front pay, any other compensatory, punitive, or liquidated damages, costs, attorney fees, and such other relief as deemed just and proper.

## <u>COUNT VI</u>
**Common Law Wrongful Termination in Violation of the Federal Motor Vehicle Safety Regulations as Adopted by the Pennsylvania Administrative Code Title 67, Transportation and the Surface Transportation Assistance Act (hereinafter "STAA"), 49 U.S.C. § 31105. (Plaintiff vs. Defendant Stat Courier)**

98.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

99.  "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Mikhail v. Pennsylvania Org. for Women in Early Recovery*, 63 A.3d 313, 316 (Pa. Super. 2013).

100.  However, under a narrow exception to this rule, an employee may bring a cause of action for termination if such termination would violate "a clear mandate of public policy" of the Commonwealth.  *Reyes v. Termac Corp.*, CIV.A. 11-5124, 2012 WL 3517372, at *2 (E.D. Pa. Aug. 15, 2012) (citing *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286 (Pa. 2000)).

101.  "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation or a judicial decision.'" *Tanay v. Encore Healthcare, LLC*, 810 F.Supp.2d 734, 737 (E.D.Pa.2011) (quoting *Hunger v. Grand Cent. Sanitation*, 447 Pa.Super. 575, 670 A.2d 173, 175 (Pa. Super.1996)).

102.  This public policy exception applies and permits a cause of action for wrongful discharge where the employer discharges an employee for refusing to commit a crime, where the employer discharges an employee for complying with a Statutorily imposed duty, or where the employer is specifically prohibited from discharging the employee by Statute. *Deal v. Children's Hosp. of Philadelphia*, 223 A.3d 705, 712 (Pa. Super. 2019) (citing *Greco*, 199 A.3d at 436; Stewart, 114 A.3d at 428).

103.  Defendant is an Interstate and intrastate motor carrier, as Plaintiff's duties included transporting freight in the Commonwealth and across State lines, and therefore must comply with State and federal Department of Transportation safety regulations concerning driving of

commercial motor vehicles, parts and accessories necessary for safe operations, hours of services, and inspection, repair and maintenance.

104. The Federal Motor Carrier Safety Administrations (hereinafter "FMCSA") is the lead agency in the United States Department of Transportation that is responsible for regulating and providing safety oversight of commercial motor vehicles (hereinafter "CMVs") under Title 49 Transportation, Subchapter B, Chapter III, Sections 300-399. The regulations issued by the FMCSA are published and compiled in U.S. Code of Federal Regulations under the Federal Motor Carrier Safety Regulations and Interpretations, Subchapter B, 49 CFR Parts 350-399.

105. The Federal Motor Carrier Safety Regulations and Interpretations are incorporated by reference by the Pennsylvania Department of Transportation under the Pennsylvania Administrative Code, Title 67 Transportation, Part I Department of Transportation, Subpart A Vehicle Code Provisions, Article VIII Administration and Enforcement, Sections 229 and 231 for Interstate and Intrastate Motor Carrier Safety Requirements, which set forth "the minimum requirements and qualifications for drivers, vehicles and other matters relating to the [Interstate and Intrastate] operation of commercial motor vehicles. Much of [these chapters] incorporate[s] by reference provisions of 49 CFR Parts 382, 385, 387 and 390—396." 67 Pa. ADC §§ 229.1, 231.1.

106. Pursuant to 49 CFR § 390 – Federal Motor Carrier Safety Regulations; General:

    (a) The rules in Subchapter B of this chapter are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in Interstate commerce.

    (b) The rules in part 383 of this chapter, Commercial Driver's License Standards; Requirements and Penalties, are applicable to every person who operates a commercial motor vehicle, as defined in § 383.5 of this subchapter, in Interstate or Intrastate commerce and to all employers of such persons.

49 CFR § 390.3.

107.    Additionally, pursuant to 49 CFR § 390.3(e), *Knowledge of and compliance with the regulations,*  "(1) Every employer shall be knowledgeable of and comply with all regulations contained in this subchapter that are applicable to that motor carrier's operations. **(2) Every driver and employee involved in motor carrier operations shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter.**  (3) All motor vehicle equipment and accessories required by this chapter shall be maintained in compliance with all applicable performance and design criteria set forth in this subchapter."

108.    Plaintiff, as a CDL truck driver and employee of Defendant, has an imperative regulatory duty to comply with the regulations set forth under State and federal law.  49 CFR § 390.3(e)(2); 67 Pa. ADC §§ 229.1, 231.1.

109.    Further, under Title 49 Transportation, U.S.C. § 31135 – *Duties of employers and employees*, "Each employer and employee shall  comply  with regulations on commercial  motor vehicle safety prescribed by the Secretary of Transportation safety prescribed by the Secretary of Transportation under this subchapter that apply to the employer's or employee's conduct." 49 U.S.C. § 31135(a).

110.    Thus, Plaintiff had an affirmative regulatory duty to comply with Department of Transportation safety regulations under public policy of the Commonwealth.

111.     Plaintiff made numerous complaints to Defendant regarding truck maintenance and repair issues, including but not limited to, worn out tires, duct taped seats, malfunctioning turn signals, holes in the truck floor, malfunctioning brakes, and a broken door jam. *See* 49 CFR §§ 393.1-293.209, 396.1-396.25.

112. Plaintiff told Defendant that he would not operate any trucks in disrepair until they were properly repaired in compliance with State and federal Department of Transportation regulations.

113. Defendant failed to perform the required truck maintenance and repairs as Plaintiff observed trucks that he had reported being operated by other drivers.

114. Plaintiff contacted OSHA regarding Defendant's violations of DOT regulations; however, he was told that OSHA could not do anything about it and he must contact the DOT.

115. On the date of Plaintiff's termination, Defendant told him that he "complained so much," to which Plaintiff replied that he was just letting him know before someone got hurt.

116. The Surface Transportation Assistance Act, 49 U.S.C. § 31105(a)(1), provides protections for employees from discharge, discipline or discrimination because:

    A. (i) the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order, or has testified or will testify in such a proceeding; or
(ii) the person perceives that the employee has filed or is about to file a complaint or has begun or is about to begin a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order;

    B. the employee refuses to operate a vehicle because -
(i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security; or
(ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition;
…

    E. the employee furnishes, or the person perceives that the employee is or is about to furnish, information to the Secretary of Transportation, the Secretary of Homeland Security, the National Transportation Safety Board, or any Federal, State, or local regulatory or law enforcement agency as to the facts relating to any accident or incident resulting in injury or death to an individual or damage to property occurring in connection with commercial motor vehicle transportation.

49 U.S.C. § 31105(a)(1).

117.    Pursuant to 49 U.S.C. § 31105(a)(1), Plaintiff was protected by Statute from being discharged or discriminated against for by Defendant his complaints related to commercial motor vehicle safety and refusing to operate a vehicle because such operation would violate commercial motor vehicle safety regulations and posed a risk of serious injury to Plaintiff or the public.

118.    Defendant discharged Plaintiff for complying with a Statutorily imposed duty to ensure.  *See Deal*, 223 A.3d 705, 712; 49 CFR § 390.3(e)(2).

119.    Defendant was specifically prohibited by law from discharging Plaintiff for reporting commercial vehicle safety violations. *See Deal*, 223 A.3d 705, 712; 49 U.S.C. § 31105(a)(1).

120.    Thus, Defendant violated the public policy of the Commonwealth when it retaliated against and terminated Plaintiff.  *See Deal*, 223 A.3d 705, 712.

121.    As a direct and proximate result of the above-mentioned, Plaintiff suffered actual damages, loss of income, lost wages, emotional distress, annoyance and embarrassment.

122.    Defendant's actions were knowing, intentional, reckless, and done with conscious indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, Stat Courier, including back pay, front pay or reinstatement, compensatory damages, punitive damages, costs and such other relief as deemed just and proper.

**COUNT VII**

**Wrongful Termination in Violation of the Federal Motor Vehicle Safety Regulations as Adopted by the Pennsylvania Administrative Code Title 67, Transportation and the Surface Transportation Assistance Act (hereinafter "STAA"), 49 U.S.C. § 31105.**

**(Administrative case not yet concluded by DOL/OSHA)**
**(Amendment forthcoming)**


**COUNT VIII**

**Wrongful Termination in Violation of NLRA Section 7 and 8**

**(Administrative case not yet concluded by DOL/OSHA)**
**(Amendment forthcoming)**


**JURY TRIAL DEMANDED ON ALL MATTERS SO TRIABLE.**


Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**


Date: September 15, 2022

By: */s/ Joshua P. Ward*
Joshua P. Ward (Pa. I.D. No. 320347)

J.P. WARD & ASSOCIATES, LLC
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

*Counsel for Plaintiff*