IN THE UNITED STAT COURIERES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN JEMISON, on behalf of himself      :
and all others similarly situated,        :
                                          :
        Plaintiff,                        :
                                          :   **Case No.:** 2:22-cv-01322-WSH
    v.                                    :
                                          :
STAT COURIER, INC., d/b/a, ATM            :
AMERICAN TRASNPORTATION                   :   **FIRST AMENDED CLASS ACTION**
MANAGEMENT & DESIGN,  AARON               :   **COMPLAINT**
TOMCZAK, ARON PUPI and BRUCE              :
TOMCZAK, individually,                    :

        Defendants.

Filed on Behalf of Plaintiff:
Steven Jemison

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:    (412) 545-3015
Fax No.:      (412) 540-3399
E-mail:       jward@jpward.com

IN THE UNITED STAT COURIERES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN JEMISON, on behalf of himself** | : | |
| **and all others similarly situated** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No.:** 2:22-cv-01322-WSH |
| **v.** | : | |
| | : | |
| **STAT COURIER, INC., d/b/a, ATM** | : | |
| **AMERICAN TRASNPORTATION** | : | |
| **MANAGEMENT & DESIGN, AARON** | : | |
| **TOMCZAK, BRUCE TOMCZAK, ARON** | : | |
| **PUPI, individually,** | : | |
| | | |
| **Defendants.** | | |

## FIRST AMENDED CLASS ACTION COMPLAINT

AND NOW, comes Plaintiff, Steven Jemison, by and through the undersigned counsel, J.P.

Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within First

Amended Complaint against Defendant, Stat Courier, Inc., d/b/a ATM American Transportation

Management & Design, and Aaron Tomczak, of which the following is a statement:

## PARTIES

1.    Plaintiff, Steven Jemison (hereinafter "Mr. Jemison" or "Plaintiff"), is an adult

individual who currently resides at 6 Rosamond St, McKees Rocks, Pennsylvania 15136

2.    Defendant, Stat Courier, Inc. (hereinafter "Stat Courier") is a Pennsylvania

business located at 6 River Rd., McKees Rocks, PA, 15136.  Stat Courier, Inc. has registered its

trademark "ATM American Transportation Management & Design" with the Commonwealth.

3.      Defendant, Bruce Tomczak (hereinafter "Mr. Tomczak") is an adult individual residing at 517 Burkes Drive, Coraopolis, Pennsylvania, 15108.

4.      Defendant, Aaron Tomczak, is an adult individual who currently resides at 302 Indian Ridge Drive, Coraopolis, Pennsylvania, 15108.

5.      Defendant, Aron Pupi (hereinafter "Mr. Pupi") is an adult individual residing at 112 Muirfield Place, Beaver, Pennsylvania, 15009.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper as Plaintiff on behalf of himself and all others similarly situated brings this lawsuit under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq*., the Wage Payment and Collection Law ("WPCL") 43 P.S. §260.1 *et seq*., the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat Courier. Ann. §333.101, *et seq.,* Common Law Wrongful Termination in Violation of the Federal Motor Vehicle Safety Regulations as Adopted by the Pennsylvania Administrative Code Title 67, Transportation and the Surface Transportation Assistance Act (hereinafter "STAA"), 49 U.S.C. § 31105.

7.      This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.

8.      A substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

9.      Stat Courier is a transportation company founded in 1994 that hauls general freight.

10.    Stat Courier published an employment advertisement on Indeed for CDL truck drivers. The rate of compensation for the truck driver position was $18.50 per hour.

11.    On or about November 4, 2021, Mr. Jemison initiated employment with Stat Courier as a CDL truck driver.

A.    <u>**FAILURE TO PAY AGREED UPON WAGE**</u>

12.    When Plaintiff initiated his employment with Defendant the agreed upon rate of compensation was $18.50 per hour as was advertised in the Indeed advertisement.

13.    A couple months into his employment, Plaintiff realized he was only being compensated at $18.00 per hour instead of the agreed upon amount of $18.50.

14.    Plaintiff approached his supervisor, Mr. Pupi to inquire about the pay discrepancy of fifty cents.

15.    Plaintiff asked Mr. Pupi, "why is my paycheck for $18.00 per hour and not $18.50 per hour?"

16.    Mr. Pupi told Plaintiff, "I don't remember telling you that!"  Mr. Pupi denied that he agreed to pay Plaintiff the $18.50 per hour.  However, the pay rate of $18.50 was agreed to on Plaintiff's second day of employment.

17.    A couple of days later, Mr. Pupi approached Mr. Jemison and told him that his pay was corrected to reflect the $18.50 agreed upon wage.  At that time, Mr. Pupi cautioned Plaintiff that he was not to disclose his rate to any of his fellow drivers.

18.    Mr. Jemison requested that Mr. Pupi produce all of his paystubs from the beginning of his employment until present.

19.    Mr. Pupi replied to Plaintiff, "I will get you your pay stubs."

20.     Mr. Jemison would ask Mr. Pupi at least once a week about his paystubs. Mr. Pupi continued to tell Mr. Jemison he was working on getting them.

21.     Defendants never provided Plaintiff's pay stubs, despite repeated demand.

**B.** **FAILURE TO PAY OVERTIME TO THE STATE CLASS AND FLSA COLLECTIVE CLASS**

22.     According to Mr. Jemison's pay stubs, received in September of 2022, Mr. Jemison worked at least 16.6 hours in overtime between November 2, 2021 and May 1, 2022.

23.     Mr. Jemison and the collective class members would discuss the lack of overtime pay amongst themselves and would frequently make complaints to management about the lack of overtime compensation.

24.     Stat Courier failed to pay Mr. Jemison and the collective class members overtime compensation (1.5 x base pay) for the entirety of their employment.

25.     Various representatives of Stat Courier told Mr. Jemison and the collective class members that they were exempt from the FLSA overtime provisions pursuant to the Federal Motor Carrier Safety Act.

26.     Specifically, Mr. Pupi told Mr. Jemison, "We don't pay overtime. So, if you work overtime, you will receive only base pay."

27.     During each week of employment, Mr. Jemison and collective class members operated a twenty-six-foot box truck, cargo vans, and sprinter vans for Stat Courier.

28.     Mr. Jemison and the collective class members would routinely cross state lines.

29.     Mr. Jemison and the collective class, during each week of employment, routinely operated and performed safety checks and maintenance for vehicles that did not exceed 10,000 pounds, unladen.

30.     Mr. Jemison and the collective class, during each week of employment, did not operate or perform duties on vehicles that were designed or used to transport more than 8 passengers, including the driver.

31.     Mr. Jemison and the collective class, during each week of employment, did not transport hazardous materials requiring visible placarding.

32.     Thus, Mr. Jemison and the collective class, for each week of employment, were not subject to the FMCSA overtime exemption, per Section 13(b)(1).

**C.  MR. JEMISON REPORTED FMCSA SAFETY VIOLATIONS.**

33.     Before a truck driver begins to drive a route, the truck driver must perform a pre-trip inspection of the truck. A pre-trip inspection is necessary to ensure that the truck meets all the safety requirements.

34.     Stat Courier was fully aware its trucks did not meet DOT's safety standards, but they still allowed their CDL drivers to utilize the trucks. Stat Courier placed its drivers and the public at risk.

35.     Mr. Jemison reported safety concerns and DOT violations to the attention of Dispatch Assistant Manager, Becky LNU ("Ms. Becky") and Mr. Pupi numerous times throughout his employment, including, holes in the floors of trucks, bald tires, and vehicles that could not pass inspection.

36.     On or about May 4, 2022, Mr. Jemison was contacted by Stat Courier because they needed a truck driver to take a route the following day.

37.     Mr. Jemison noticed, during his pre-trip inspection, the truck did not meet the safety requirements. He refused to drive the truck until it had the necessary repairs.

38.    Mr. Jemison immediately brought this to the attention of Mr. Pupi. He assured Mr. Jemison that the truck would go right in the shop for repairs.

39.    Upon information and belief, Mr. Pupi did not place the truck in the shop for repairs. Mr. Jemison witnessed another employee utilize the same truck to make his delivery.

40.    Stat Courier continued to violate DOT's public policy and provisions related to motor vehicle safety even after being made aware of the poor conditions of its trucks.

**D.  RETALIATORY TERMINATION**

41.    On or about May 5, 2022, Mr. Jemison drove his route and returned to the Stat Courier warehouse in or around 1:30 p.m.

42.    Mr. Jemison, for the third time that week, asked Mr. Pupi for his paystubs.

43.    Mr. Pupi told Mr. Jemison that he "complained too much" about the safety of the trucks, lack of overtime pay, and lack of paystubs.

44.    Mr. Jemison replied to Mr. Pupi and Ms. Becky that he was only making them aware of the unsafe conditions because he was required to do so under federal and state law.

45.    Mr. Pupi yelled angrily at Mr. Jemison "Do you not trust me?" Mr. Jemison replied, "Not really." This caused Mr. Pupi to become visibly and audibly infuriated.

46.    Mr. Pupi became furious and yelled at Mr. Jemison, "Are you f***ing kidding me! You're fired!"

47.    Upon information and belief, both Aaron and Bruce Tomczak were aware of Mr. Pupi's actions and ratified the same.

48.    Mr. Jemison was unlawfully terminated as a direct and proximate result of his complaints regarding failure to pay the agreed upon rate, failure to pay overtime, concerted activities, and failure to rectify safety hazards and violations of state and federal laws.

## CLASS ALLEGATIONS

49.    Plaintiff brings this action on behalf of himself and the FLSA Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). Plaintiff also brings this action on behalf of himself and the PA Class as a class action pursuant to Fed. R. Civ. P. 23 for claims under Pennsylvania State Laws:

   a.    **The FLSA Collective Class:**

         All employees of Defendant who performed work, in excess of 40 hours per week, without compensation within the applicable statute of limitations.

   b.    **The PA WPCL / PA. mwa Class:**

         All employees of Defendant who performed work, in excess of 40 hours per week, without compensation at within the applicable statute of limitations.

50.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

51.    By contrast, the claims brought under Pennsylvania Laws may be pursued by all similarly situated persons who do not opt out of the PA Class pursuant to Fed. R. Civ. P. 23.

52.    Excluded from the Classes are Defendants, Stat Courier, Inc. d/b/a ATM American Transportation Management & Design, Bruce Tomczak, Aaron Tomczak, and Aron Pupi as well as their past and present officers, any judge who presides over this action, and any attorneys who enter their appearance in this action.

53.    Plaintiff reserves the right to expand, limit, modify, or amend the Classes' definitions, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based on, among other things, changing circumstances and new facts obtained during discovery.

54.     Questions of law and fact common to the Classes, predominate over any issues involving only individual class members. The primary issues concern: Defendants' failure to compensate employees hours worked in excess of 40 hours at a rate of at least minimum wage, including straight time and overtime, in violation 29 U.S.C. §201, *et seq*. of the FLSA, 43 Pa. Stat. Ann. § 333.101, *et seq.* of the PMWA, 43 P.S. § 260.9 of the Wage Payment and Collection Law, or alternatively Pennsylvania common law.

55.     This action has been brought, and may properly be maintained, as a collective action or class action pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 because of a well-defined public interest in this litigation:

56.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Upon information and belief, the members of Class are so numerous that individual joinder of all class members is impracticable because there are dozens of persons where Defendants have failed to compensate for a minimum of sixteen hours of overtime.

57.     The identities of all class members are readily ascertainable from the records of Defendants.

58.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves questions of law and fact that are common to the class members and predominate over questions affecting only individual Class Members. Such common questions include, but are not limited to:

   a.     Whether Defendants failed to compensate employees for all hours worked, both overtime and straight time, in violation of 29 U.S.C. §201, *et seq*. of the FLSA, 43 Pa. Stat. Ann. §333.101, *et seq.* of the PMWA, and 43 P.S. §260.9 of the Wage Payment and Collection Law.

b.      Whether Plaintiff and the Class are entitled to relief in the forms, including but not limited to, declaratory or injunctive in nature.

59.      **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The Plaintiff's claims are typical of the other class members' claims because, among other things, all class members were comparably injured. The Plaintiff and all members of the Plaintiff's Class have claims arising out of the Defendants' common uniform course of conduct complained of herein.

60.      **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the classes will not be harmed. Furthermore, the interests of the class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

61.      **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

62.     **Superiority − Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

63.     **Ascertainability –** all members of the proposed class are ascertainable. Defendants have access to Class Members' names and addresses affected by the Defendants' wrongful conduct described herein.

## STATEMENTOF CLAIMS

### COUNT I
### FAILURE TO PAY OVERTIME
### IN VIOLATION OF THE FLSA
### (Plaintiff vs. Defendants)
### Jointly and Severally

64.     Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

65.    Under the Fair Labor Standards Act (hereinafter "FLSA"), an employer is prohibited from employing an employee for a workweek "longer than forty hours unless such employee receives compensation" for hours worked more than the specified forty hours. 29 U.S.C.S. §207(a)(1).  This rate must be at a rate "not less than one and one-half times the regular rate at which [the employee] is employed." *Id*.

66.    When a plaintiff seeks to establish an overtime claim under the FLSA, he must "sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours. *Rosario v. First Student Mgmt., LLC*, 2016 U.S. Dist. LEXIS 108172 at *20 (E.D. Pa. 2016).  The plaintiff is also required to "connect the dots between bare allegations of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly scheduled shifts," so that "allegations concerning a typical forty-hour work week include an assertion that the employee worked additional hours during such a week." *Id*.

67.    Plaintiff is an "employee" as defined by 29 U.S.C.S §203(e)(1) of the FLSA.

68.    Defendants are "employer[s]" as defined by 29 U.S.C.S §203(d) of the FLSA.

69.    The FLSA imposes individual liability, jointly and severally, upon Bruce Tomzcak , Aron Pupi, and Aaron Tomzcak because they meet the definition of "employer." 29 U.S.C.S §203(d).  Indeed, Bruce Tomzcak is the sole owner and is the ultimate authority with respect to operations.  Aron Pupi was second in command and the direct supervisor to Plaintiff.

70.    Additionally, Aron Pupi, Bruce Tomzcak, and Aaron Tomzcak are corporate officers and executives. Thus, they may be held individually liable pursuant to the well-recognized Pennsylvania common law 'participation theory.'

71.    Mr. Jemison was not overtime exempt, as set forth hereinabove.

72.    Defendants required Plaintiff to regularly work more than forty hours per week.

73.    Plaintiff worked at least 16.6 hours in overtime between November 2, 2021 and May 1, 2022.

74.    The actions of Defendants were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

75.    As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendants, jointly and severally including back pay, pre-judgment interest, any available compensatory, punitive, or liquidated damages, costs, attorney fees, and such other relief as deemed just and proper.


**COUNT II**
**RETALIATORY TERMINATION / WRONGFUL TERMINATION**
**IN VILATION OF THE FLSA**
**29 U.S.C. § 215(a)(3)**
**(Plaintiff vs. Defendants)**
**Jointly and Severally**

76.    Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

77.    The retaliation provision of the FLSA states, "[I]t shall be unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] or related to this chapter, or has testified or is about to testify in any such proceeding …." 29 U.S.C. § 215(a)(3).

78.     To meet the elements for retaliatory discrimination under the FLSA, a plaintiff must establish that "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807 (E.D. Pa. 2015).

79.     In *Kasten v. Saint-Gobain Performance Plastics Corp.,* the Supreme Court held that the "[a]nti-retaliation provision of the Fair Labor Standards Act (FLSA) protects oral as well as written complaints of a violation of the Act…" *Kasten v. Saint-Gobain Performance Plastics Corp.,* 131 S. Ct. 1325 (2011).

80.     Moreover, even if the employee's alleged FLSA violations are later found to be inaccurate, the "prohibition against retaliatory discharge is not rendered inapplicable if employer's belief that employee has engaged in protected activities under Act proves to be false." *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987).

81.     Plaintiff engaged in a protective activity when he consistently asked Defendant to produce his paystubs, the agreed upon compensation rate of $18.50, reporting the unsafe box trucks, and the unpaid overtime wages.

82.     Defendants took an adverse employment action against Plaintiff by terminating his employment due to him becoming a liability to the company.

83.     Defendants viewed Plaintiff as a nuisance as a result of his frequent complaints about the lack of overtime compensation and request for his pay stubs so that he might audit his pay.

84.      The actions of Defendants were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

85.     As a direct and proximate result of Defendants tortious conduct, Plaintiff suffered damages, including, but not limited to, lost back pay, front pay, past, present and future emotional distress, humiliation, and economic loss.

WHEREFORE, Plaintiff, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendants, jointly and severally, including back pay, front pay, any other compensatory, punitive, or liquidated damages, costs, attorney fees, and such other relief as deemed just and proper.

## COUNT III

### FAILURE TO PAY OVERTIME AND BASE RATE
### IN VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT
### 43 P.S. § 333.101, *et seq.*
### (Plaintiff vs. All Defendants)

86.     Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

87.     The Pennsylvania Minimum Wage Act (hereinafter "PMWA") States that overtime pay is required "for hours in excess of forty hours in a workweek. 43 P.S. §333.104(c).  Further, the PMWA requires the same time and a half payments for "all hours worked past 40 in a week." *Ellis v. Edward D. Jones & Co., L.P.,* 527 F. Supp. 2d 439, 452 (W.D. Pa. 2007) (citing 29 U.S.C.S. 207(a), 43 P. S. 333.104(c)).

88.     Because the PMWA parallels the FLSA in "requiring employers to compensate their employees for overtime hours work and has an identical standard of liability as the FLSA in overtime claims," courts analyze PMWA claims and FLSA claims under the same framework.

*Rummel v. Highmark, Inc.*, 2013 U.S. Dist. LEXIS 162757 at *9 (W.D. Pa. 2013) (citing *Alers v. City of Philadelphia,* 919 F. Supp. 2d 528, 557-60 (E.D. Pa. 2013)).

89.     Thus, "plaintiff-employees asserting PMWA violations must substantiate their claims by demonstrating that they performed work for which they were not paid . . . and that the defendant-employer had actual or constructive knowledge of the plaintiff's overtime work." *Alers v. City of Philadelphia*, 919 F. Supp. 2d at 560 (E.D. Pa. 2013).

90.     Plaintiff worked an average of 45-48 hours per week, throughout his employment with Stat Courier.

91.     Defendant's demands required Plaintiff to regularly work more than forty hours per week, a fact of which Bruce and Aaron Tomzcak were fully aware.

92.     Plaintiff worked up to 16.6 hours of overtime since the initiation of his employment.

93.     Stat Courier failed to compensate Plaintiff at a rate "not less than one and one-half times" his base rate of pay for the hours worked per week over forty in violation of 43 P.S. §333.104(c).

94.     Defendants' actions were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

95.     As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages and emotional distress in the past, present and future.

WHEREFORE, Plaintiff, Steven Jemison, respectfully requests this Honorable Court enter judgment in his favor and against Defendants and enter any and all wages due to Plaintiff, in excess of arbitration limits, as well as costs and attorney's fees and liquidated damages pursuant to the Pennsylvania Minimum Wage Act.

**COUNT IV**
**FAILURE TO PAY WAGES**
**IN VIOLATION OF THE WPCL**
**(Plaintiff vs. Defendants)**
**Jointly and Severally**

96.    Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

97.    "Whenever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable. 43 P.S. § 260.5.

98.    Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

99.    Aron Pupi, Bruce Tomzcak and Aaron Tomzcak are corporate officers and executives. Thus, he may be held individually liable pursuant to the well-recognized Pennsylvania common law 'participation theory.'

100.    Although the Pennsylvania WPCL, 43 Pa. C.S. §260.2a does not provide a statutory definition of the term "employee," Pennsylvania Courts have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed." *Frank Burns, Inc. v. Interdigital Communs. Corp.*, 704 A.2d 678, 680-681 (Pa. Super. Ct. 1997).

101.    Stat Courier qualifies as "an employer" within the definition of the WPCL 43 Pa. C.S. §260.2a.

102.    Plaintiff was an employee working in the Commonwealth of Pennsylvania.

103.    Stat Courier failed to compensate Plaintiff for the agreed upon wage during the first five months of his employment.

104.    Defendants' actions were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

105.    As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages, emotional distress, anxiety, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendants, jointly and severally, including back pay, front pay, any other compensatory, punitive, or liquidated damages, costs, attorney fees, and such other relief as deemed just and proper.

<u>**COUNT V**</u>
**BREACH OF CONTRACT**
**(Plaintiff vs. Defendant Stat Courier)**

106.    Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

107.    Under Pennsylvania law, a Plaintiff bringing an action for breach of contract must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages." *CoreStat Courieres Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (citing *Gen. Stat Couriere Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Commw. Ct. 1976)).

108.    Stat Courier advertised on Indeed for CDL truck drivers being compensated at a rate of $18.50 per hour.

109.    Plaintiff applied for and was hired for the position of CDL truck driver by Stat Courier to be compensated at the agreed upon wage of $18.50.

110.    Stat Courier failed to compensate Plaintiff at the agreed upon wage for the first five months of his employment.

111.    Plaintiff brought the discrepancy in wages to Stat Courier's attention.

112.    As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages and consequential damages.

WHEREFORE, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, Stat Courier, Inc., including, compensatory damages, consequential damages, expectation damages, costs of suit, and such other relief as deemed just and proper.

### <u>COUNT VI</u>
**Common Law Wrongful Termination in Violation of the Federal Motor Vehicle Safety Regulations as Adopted by the Pennsylvania Administrative Code Title 67, Transportation and the Surface Transportation Assistance Act (hereinafter "STAA"), 49 U.S.C. § 31105. (Plaintiff vs. Defendant Stat Courier)**

113.    Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

114.    "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Mikhail v. Pennsylvania Org. for Women in Early Recovery*, 63 A.3d 313, 316 (Pa. Super. 2013).

115.    However, under a narrow exception to this rule, an employee may bring a cause of action for termination if such termination would violate "a clear mandate of public policy" of the

Commonwealth. *Reyes v. Termac Corp.*, CIV.A. 11-5124, 2012 WL 3517372, at *2 (E.D. Pa. Aug. 15, 2012) (citing *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286 (Pa. 2000)).

116.    "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation or a judicial decision.'" *Tanay v. Encore Healthcare, LLC*, 810 F.Supp.2d 734, 737 (E.D.Pa.2011) (quoting *Hunger v. Grand Cent. Sanitation*, 447 Pa.Super. 575, 670 A.2d 173, 175 (Pa. Super.1996)).

117.    This public policy exception applies and permits a cause of action for wrongful discharge where the employer discharges an employee for refusing to commit a crime, where the employer discharges an employee for complying with a Statutorily imposed duty, or where the employer is specifically prohibited from discharging the employee by Statute. *Deal v. Children's Hosp. of Philadelphia*, 223 A.3d 705, 712 (Pa. Super. 2019) (citing *Greco*, 199 A.3d at 436; Stewart, 114 A.3d at 428).

118.    Defendant is an Interstate and intrastate motor carrier, as Plaintiff's duties included transporting freight in the Commonwealth and across State lines, and therefore must comply with State and federal Department of Transportation safety regulations concerning driving of commercial motor vehicles, parts and accessories necessary for safe operations, hours of services, and inspection, repair and maintenance.

119.    The Federal Motor Carrier Safety Administrations (hereinafter "FMCSA") is the lead agency in the United States Department of Transportation that is responsible for regulating and providing safety oversight of commercial motor vehicles (hereinafter "CMVs") under Title 49 Transportation, Subchapter B, Chapter III, Sections 300-399.  The regulations issued by the

FMCSA are published and compiled in U.S. Code of Federal Regulations under the Federal Motor Carrier Safety Regulations and Interpretations, Subchapter B, 49 CFR Parts 350-399.

120.    The Federal Motor Carrier Safety Regulations and Interpretations are incorporated by reference by the Pennsylvania Department of Transportation under the Pennsylvania Administrative Code, Title 67 Transportation, Part I Department of Transportation, Subpart A Vehicle Code Provisions, Article VIII Administration and Enforcement, Sections 229 and 231 for Interstate and Intrastate Motor Carrier Safety Requirements, which set forth "the minimum requirements and qualifications for drivers, vehicles and other matters relating to the [Interstate and Intrastate] operation of commercial motor vehicles. Much of [these chapters] incorporate[s] by reference provisions of 49 CFR Parts 382, 385, 387 and 390—396."  67 Pa. ADC §§ 229.1, 231.1.

121.    Pursuant to 49 CFR § 390 – Federal Motor Carrier Safety Regulations; General:

(a) The rules in Subchapter B of this chapter are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in Interstate commerce.

(b) The rules in part 383 of this chapter, Commercial Driver's License Standards; Requirements and Penalties, are applicable to every person who operates a commercial motor vehicle, as defined in § 383.5 of this subchapter, in Interstate or Intrastate commerce and to all employers of such persons.

49 CFR § 390.3.

122.    Additionally, pursuant to 49 CFR § 390.3(e), *Knowledge of and compliance with the regulations,* "(1) Every employer shall be knowledgeable of and comply with all regulations contained in this subchapter that are applicable to that motor carrier's operations. **(2) Every driver and employee involved in motor carrier operations shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter.**  (3) All motor vehicle

equipment and accessories required by this chapter shall be maintained in compliance with all applicable performance and design criteria set forth in this subchapter."

123.    Plaintiff, as a CDL truck driver and employee of Defendant, has an imperative regulatory duty to comply with the regulations set forth under State and federal law.  49 CFR § 390.3(e)(2); 67 Pa. ADC §§ 229.1, 231.1.

124.    Further, under Title 49 Transportation, U.S.C. § 31135 – *Duties of employers and employees*,  "Each employer and employee shall  comply  with regulations on commercial  motor vehicle safety prescribed by the Secretary of Transportation safety prescribed by the Secretary of Transportation under this subchapter that apply to the employer's or employee's conduct." 49 U.S.C. § 31135(a).

125.    Thus, Plaintiff had an affirmative regulatory duty to comply with Department of Transportation safety regulations under public policy of the Commonwealth.

126.     Plaintiff made numerous complaints to Defendant regarding truck maintenance and repair issues, including but not limited to, worn out tires, duct taped seats, malfunctioning turn signals, holes in the truck floor, malfunctioning brakes, and a broken door jam. *See* 49 CFR §§ 393.1-293.209, 396.1-396.25.

127.    Plaintiff told Defendant that he would not operate any trucks in disrepair until they were  properly  repaired  in  compliance  with  State  and  federal  Department  of  Transportation regulations.

128.    Defendant failed to perform the required truck maintenance and repairs as Plaintiff observed trucks that he had reported being operated by other drivers.

129.    Plaintiff contacted OSHA regarding Defendant's violations of DOT regulations; however, he was told that OSHA could not do anything about it and he must contact the DOT.

130.    On the date of Plaintiff's termination, Defendant told him that he "complained so much," to which Plaintiff replied that he was just letting him know before someone got hurt.

131.    The Surface Transportation Assistance Act, 49 U.S.C. § 31105(a)(1), provides protections for employees from discharge, discipline or discrimination because:

A.  (i) the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order, or has testified or will testify in such a proceeding; or
(ii) the person perceives that the employee has filed or is about to file a complaint or has begun or is about to begin a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order;

B.  the employee refuses to operate a vehicle because -
(i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security; or
(ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition;
…

E.  the employee furnishes, or the person perceives that the employee is or is about to furnish, information to the Secretary of Transportation, the Secretary of Homeland Security, the National Transportation Safety Board, or any Federal, State, or local regulatory or law enforcement agency as to the facts relating to any accident or incident resulting in injury or death to an individual or damage to property occurring in connection with commercial motor vehicle transportation.

49 U.S.C. § 31105(a)(1).

132.    Pursuant to 49 U.S.C. § 31105(a)(1), Plaintiff was protected by Statute from being discharged or discriminated against for by Defendant his complaints related to commercial motor vehicle safety and refusing to operate a vehicle because such operation would violate commercial motor vehicle safety regulations and posed a risk of serious injury to Plaintiff or the public.

133.    Defendant discharged Plaintiff for complying with a Statutorily imposed duty to ensure.  *See Deal*, 223 A.3d 705, 712; 49 CFR § 390.3(e)(2).

134.    Defendant was specifically prohibited by law from discharging Plaintiff for reporting commercial vehicle safety violations. *See Deal*, 223 A.3d 705, 712; 49 U.S.C. § 31105(a)(1).

135.    Thus, Defendant violated the public policy of the Commonwealth when it retaliated against and terminated Plaintiff. *See Deal*, 223 A.3d 705, 712.

136.    As a direct and proximate result of the above-mentioned, Plaintiff suffered actual damages, loss of income, lost wages, emotional distress, annoyance and embarrassment.

137.    Defendant's actions were knowing, intentional, reckless, and done with conscious indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff, Steven Jemison, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, Stat Courier, including back pay, front pay or reinstatement, compensatory damages, punitive damages, costs and such other relief as deemed just and proper.

## COUNT VII
**Wrongful Termination in Violation of the Federal Motor Vehicle Safety Regulations as Adopted by the Pennsylvania Administrative Code Title 67, Transportation and the Surface Transportation Assistance Act (hereinafter "STAA"), 49 U.S.C. § 31105.**

**(Administrative case not yet concluded by DOL/OSHA)**
**(Amendment forthcoming)**

## COUNT VIII
**Wrongful Termination in Violation of NLRA Section 7 and 8**

**(Administrative case not yet concluded by NLRB)**
**(Amendment forthcoming)**

<u>COUNT VIIII</u>
**FAILURE TO PAY OVERTIME TO THE COLLECTIVE CLASS
IN VIOLATION OF THE FLSA
(Plaintiff on behalf of the Collective Class vs. Defendants)
Jointly and Severally**

138.    Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

139.    Under the Fair Labor Standards Act (hereinafter "FLSA"), an employer is prohibited from employing an employee for a workweek "longer than forty hours unless such employee receives compensation" for hours worked more than the specified forty hours. 29 U.S.C.S. §207(a)(1).  This rate must be at a rate "not less than one and one-half times the regular rate at which [the employee] is employed." *Id*.

140.    When a plaintiff seeks to establish an overtime claim under the FLSA, he must "sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours. *Rosario v. First Student Mgmt., LLC*, 2016 U.S. Dist. LEXIS 108172 at *20 (E.D. Pa. 2016).  The plaintiff is also required to "connect the dots between bare allegations of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly scheduled shifts," so that "allegations concerning a typical forty-hour work week include an assertion that the employee worked additional hours during such a week." *Id*.

141.    Plaintiff and the collective class members are "employees" as defined by 29 U.S.C.S §203(e)(1) of the FLSA.

142.    Defendants are "employer[s]" as defined by 29 U.S.C.S §203(d) of the FLSA.

143.    The FLSA imposes individual liability, jointly and severally, upon Bruce Tomzcak, Aron Pupi, and Aaron Tomzcak because they meet the definition of "employer." 29 U.S.C.S

§203(d).  Indeed, Bruce Tomzcak is the sole owner and is the ultimate authority with respect to operations.  Aron Pupi was second in command and the direct supervisor to Plaintiff.

144.    Additionally, Aron Pupi, Bruce Tomzcak, and Aaron Tomzcak are corporate officers and executives. Thus, they may be held individually liable pursuant to the well-recognized Pennsylvania common law 'participation theory.'

145.    Notwithstanding the Section 13(b)(1) exemption, the overtime provisions of Section 7 of the FLSA shall apply to an employee of a motor carrier or motor private carrier in any work week that:

1.   The employee's work, in whole or in part, is that of a driver, driver's helper, loader or mechanic affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles:

   (a) Designed or used to transport more than 8 passengers, including the driver, for compensation; or

   (b) Designed or used to transport more than 15 passengers, including the driver, and not used to transport passengers for compensation; or

   (c) Used in transporting hazardous material, requiring placarding under regulations prescribed by the Secretary of Transportation;

2.   The employee performs duties on motor vehicles weighing 10,000 pounds or less.

146.    Mr. Jemison and the collective class members were not overtime exempt, as set forth hereinabove.

147.    Defendants required Plaintiff and the collective class members to frequently work overtime hours but refused to compensate them for the hours worked in excess of 40 hours.

148.    The actions of Defendants were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff.  The imposition of punitive damages is warranted.

26

149.    As a direct and proximate result of the aforementioned conduct, Plaintiff and the collective class members suffered actual damages, including, but not limited to, lost wages and severe inconvenience, all in the past, present, and future.

### COUNT X
### FAILURE TO PAY OVERTIME WAGE IN VIOLATION OF
### THE PENNSYLVANIA MINIMUM WAGE ACT
*(Plaintiff on behalf of the PA Class Members vs. Defendants)*
*Jointly and Severally*

150.    Plaintiffs incorporate the allegations contained in the paragraphs, above, as if fully set forth at length herein.

151.    The PWMA states that overtime pay is required "for hours in excess of forty hours in a workweek. 43 Pa. Stat. Ann. §333.104(c). Further, the PMWA requires the same time and a half payment for "all hours worked past 40 in a week." *Ellis v. Edward D. Jones & Co., L.P.,* 527 F. Supp. 2d 439, 452 (W.D. Pa. 2007) (citing 29 U.S.C.S. 207(a), 43 Pa. Stat. Ann. 333.104(c)).

152.    Because the PMWA "substantially parallels" the FLSA, this Court should look to the federal courts' interpretation of the FLSA when analyzing claims under the PMWA. *Philadelphia Metal Trades Council v. Konnerud Consulting W.*, A.S., No. CV 15-5621, 2016 WL 1086709, at *5 (E.D. Pa. Mar. 21, 2016) (citing *Ford-Greene*, 106 F. Supp. 3d at 610–13 (applying the Third Circuit's analysis in Davis to the plaintiff's claims under both the FLSA and PMWA).

153.    Thus, "plaintiff-employees asserting PMWA violations must substantiate their claims by demonstrating that they performed work for which they were not paid . . . and that the defendant-employer had actual or constructive knowledge of the plaintiff's overtime work." *Alers v. City of Philadelphia*, 919 F. Supp. 2d at 560.

154.    Defendants failed to compensate Plaintiff and PA Class members for overtime hours worked when Plaintiff and PA Class Members worked more than 37.5 hours in violation of 43 Pa. Stat. Ann. §333.104(c).

155.    Plaintiffs and the PA Class Members have yet to be fully and properly compensated for all overtime hours worked.

156.    Further, a corporate officer such as Bruce Tomczak, Aaron Tomczak, and Aron Pupi who participates in wrongful, injury-producing conduct can be personally liable, that is, individually liable for torts committed while acting within the scope of his or her employment by the corporation. *Loeffler v. McShane*, 539 A.2d 876 (Pa. Super. 1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1186 (Pa. Super. 1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa. Super. 1977); *Tayar v. Camelback Corp. Inc.*, 957 A.2d 281 (Pa. Super. 2008). Mr. Tudi and Mr. Titus are personally liable for PMWA violations and cannot shield themselves behind a corporation when they are an actual participant in the tort. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3rd Cir. 1978).

157.    As a direct and proximate result of the aforementioned conduct, Plaintiff and the PA Class suffered actual damages, including, but not limited to, lost straight time and overtime wages in amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs, other compensation pursuant to the PMWA, and such other legal and equitable relief as the Court deems just and proper.

158.    The members of the collective class were entitled to overtime compensation for said work if indeed they had worked forty (40) hours within the applicable week.

159.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

## COUNT XI
## FAILURE TO PAY WAGES FOR OVERTIME IN VIOLATION OF THE PENNSYLVNIA WAGE PAYMENT AND COLLECTION LAW
### 43 P.S. §260.1 *et seq*
*(Plaintiff and PA Class Members v. Stat Courier, Inc d/b/a ATM American Transportation Management & Design, Bruce Tomczak, Aaron Tomczak, and Aron Pupi)*

160.    Plaintiffs incorporate the allegations contained in the paragraphs, above, as if fully set forth at length herein.

161.    Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

162.    The Pennsylvania WPCL, 43 P.S. §260.1 et seq., however, does not provide "a statutory definition of the term 'employee'." *Frank Burns, Inc. v. Interdigital Communs. Corp*, 704 A.2d 678, 680-81 (Pa Super. 1997).

163.    Courts in Pennsylvania have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed," and "in the definition of employer, the entity employed by the employer, i.e., the employee, is any person in Pennsylvania."*Id.*. at 681.

164.    Pennsylvania courts have thus narrowed the definition of employee accordingly: "those who work in Pennsylvania can sue under the Pennsylvania statute, but those who do not work in Pennsylvania cannot." *Id*. Citing *Killian v. McCulloch*, 873 F. Supp. 938, 942 (E.D. Pa. 1995).

165.    The WPCL does not create a right to compensation, but "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them."

*Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (1997), citing *Killian v. McCulloch*, 850 F.Supp. 1239, 1255 (E.D.Pa.1994).

166.     As a company conducting business and employing person(s) in the Commonwealth of Pennsylvania, Defendants are "an employer" within the definition of the WPCL 43 Pa. C.S. §260.1a. Plaintiff and the PA Class Members, based on the law cited above, were employees of Defendants working within the Commonwealth of Pennsylvania.

167.     Defendants and Plaintiff and the PA Class Members entered into an oral and written employment contract where Defendants agreed to pay an hourly wage for all hours worked.

168.     Defendants required Plaintiff and the PA Class members to work  overtime without being properly compensated.

169.     Rather than correct the unlawful compensation rate, Defendants blatantly ignored Plaintiff and the PA Class Members complaints about not being compensated for the overtime hours worked.

170.     As of the date of the filing of this Complaint, Plaintiff and the PA Class Members have yet to be compensated for all hours worked in excess of 40 hours.

171.     Further, a corporate officer such as Bruce Tomczak, Aaron Tomczak, and Aron Pupi, who participates in wrongful, injury-producing conduct can be personally liable, that is, individually liable for torts committed while acting within the scope of his or her employment by the corporation. *Loeffler v. McShane*, 539 A.2d 876 (Pa. Super. 1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1186 (Pa. Super. 1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa. Super. 1977); *Tayar v. Camelback Corp. Inc.*, 957 A.2d 281 (Pa. Super. 2008). Bruce Tomczak, Aaron Tomczak, and Aron Pupi are personally liable for WPCL violations and cannot shield themselves

behind a corporation when he is an actual participant in the tort. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3rd Cir. 1978).

172.    As a direct and proximate result of the aforementioned conduct, Plaintiff and the PA Class suffered actual damages, including, but not limited to, overtime wages in amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs, other compensation pursuant to the WPCL, and such other legal and equitable relief as the Court deems just and proper.

173.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

### COUNT XII

### BREACH OF CONTRACT

*(Plaintiff and PA Class Members v. Stat Courier, Inc d/b/a ATM American Transportation Management & Design,)*

174.    Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

175.    Plaintiff and the PA Class Members were entitled, as part of Defendants' oral and written employment contract and per FLSA regulation 29 C.F.R. § 790.6(b).

176.    Defendants were bound by the duty of good faith and fair dealing. As such, Defendants had a duty to calculate and reimburse Plaintiff and the PA Class Members for the unpaid overtime wages pursuant to FLSA regulation, 29 CFR § 785.27

177.    Defendants failed to ensure accuracy of Plaintiff and the Class Members' wage payment information thus depriving him of his earned benefit.

178.    All conditions precedent to recovery have occurred.

179.    As a direct result of this breach of contract, Plaintiff and the PA Class Members have suffered damages as set forth hereinabove.

## COUNT XIII
## QUANTUM MERUIT / UNJUST ENRICHMENT

*(Plaintiff and PA Class Members v. Stat Courier, Inc d/b/a ATM American Transportation Management & Design)*

180.    Plaintiff incorporate the allegations contained in the paragraphs above as if fully set forth at length herein.

181.    Plaintiff and the PA Class Members had an expectation of payment from Defendants.

182.    Plaintiff and the PA Class Members conferred a benefit upon Defendants.

183.    Defendants appreciated the benefit of Plaintiff and the PA Class Members' time and efforts.

184.    It would be manifestly unjust if the Defendants' acceptance and retention of such benefits were permitted without payment of value to Plaintiff and the PA Class Members.

As a direct and proximate cause of the aforementioned conduct, Plaintiff and the PA Class Members suffered actual damages, including, but not limited to, wage loss, loss of income and are entitled to reimbursement, restitution and disgorgement from Defendants of the value of the benefits conferred by Plaintiff and the PA Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Steven Jemison, on his own behalf and on behalf of the Collective Class Members and PA Class Members, respectfully requests this Honorable Court enter judgment in Plaintiffs favor and against Defendant, Stat Courier, Inc d/b/a ATM American

Transportation Management & Design, Bruce Tomczak, Aaron Tomczak, and Aron Pupi as follows:

A. Declaring this action, a proper class action, certifying the classes as requested herein, designating Plaintiff as a Class Representative and appointing the undersigned counsel as Class Counsel;

B. Pursuant to 29 U.S.C. § 216(b) sending prompt notice of this litigation to all potential Class members;

C. Judgment against Defendants for their failure to pay Plaintiff and those similarly situated for all hours worked in overtime in accordance with the standards set forth by the FLSA;

D. Judgment against Defendants for their failure to pay Plaintiff and those similarly situated for all hours worked in overtime in accordance with the standards set forth by the PMWA;

E. Judgment against Defendants for their failure to pay Plaintiff and those similarly situated for all hours worked on overtime in accordance with the standards set forth by the WPCL;

F. An award against Defendants for the amount of unpaid wages owed to Plaintiff and those similarly situated;

G. An award of liquidated damages equal to the total amounts of unpaid overtime wages owed to Plaintiff and those similarly situated;

H. An award of treble damages equal to the total amounts of unpaid overtime wages owed to Plaintiff and those similarly situated;

I.  An award of reasonable attorney's fees and costs to Plaintiff and the other members of the class to be satisfied in full by Defendants;

J.  Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

K.  Leave to add additional plaintiffs, opt-in or party, through the filing of consent forms; and

L.  Ordering such other and further relief as may be just and proper by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a jury on all matters so triable.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: November 29, 2022

By: */s/ Joshua P. Ward*
    Joshua P. Ward (Pa. I.D. No. 320347)

    J.P. WARD & ASSOCIATES, LLC
    201 South Highland Avenue
    Suite 201
    Pittsburgh, PA 15206

    *Counsel for Proposed Collective Class*

34