# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN JEMISON, *on behalf of himself*
*and all others similarly situated,*

    Plaintiff,

  v.

STAT COURIER, INC., d/b/a, ATM
AMERICAN TRANSPORTATION
MANAGEMENT & DESIGN, AARON
TOMCZAK, BRUCE TOMCZAK,
ARON PUPI, individually, jointly and
severally,

    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

*Electronically Filed*

**Case No.:** 2:22-cv-01322-WSH

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF PROPOSED CLASS NOTICE, AND SCHEDULING OF A FINAL APPROVAL HEARING**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................v

I.    INTRODUCTION ...............................................................................................1

II.   FACTUAL BACKGROUND AND STATUS OF LITIGATION ....................................3

III.  SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT ........................11

    A.  THE PROPOSED SETTLEMENT CLASS ..........................................................11

    B.  THE PROPOSED CLASS NOTICE ..................................................................11

    C.  MONETARY TERMS.....................................................................................13

    D.  DISMISSAL AND RELEASE OF CLAIMS ........................................................18

    E.  PROPOSED SCHEDULE FOLLOWING PRELIMINARY APPROVAL ..........18

        1.  Mailing of Class Notices.....................................................................19

        2.  Deadline for Filing Objections to the Settlement ......................................19

        3.  Deadline for Submitting Requests for Exclusion from the Settlement......19

        4.  Final Approval Hearing .........................................................................19

IV.   ARGUMENT ...................................................................................................20

    A.  THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY

        APPROVED BY THE COURT..........................................................................20

        1.  Legal Standard for Granting Preliminary Approval

            of the Settlement of Claims under the FLSA and the PMWA..................20

        2.  Standard for Granting Preliminary Approval

            of Class Action Settlements....................................................................25

            a)  Complexity, Expense and Likely Duration of the Litigation.........28

      b)   Reaction of the Class to the Settlement ..........................................30

      c)   Stage of the Proceedings and

         the Amount of Discovery Completed ............................................30

      d)   Risks of Establishing Liability and Damages ...............................31

      e)   Risks of Maintaining the Class Action Through the Trial.............32

      f)   Ability of Defendants to Withstand a Greater Judgement .............33

      g)   Range of Reasonableness of the Settlement Fund

         in Light of the Best Possible Recovery

         and All the Attendant Risks of Litigation ......................................34

   B.   THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO

      THE CLASS ..............................................................................................35

V.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT

    PURPOSES...................................................................................................38

   A.   THE CLASS AND SUB-CLASS MEMBER GROUPS SHOULD BE

      CERTIFIED AS PROVIDED FOR IN THE SETTLEMENT AGREEMENT.....38

     1.   Rule 23(a) – Requirements Are Satisfied Here.........................................39

      a)   Rule 23(a)(1) – "Numerosity" ......................................................39

      b)   Rule 23(a)(2) – "Commonality" ...................................................40

      c)   Rule 23(a)(3) – "Typicality"..........................................................43

      d)   Rule 23(a)(4) – "Adequacy" .........................................................44

     2.   The Proposed Settlement Class Should be Certified Under Rule 23(b) ....46

   B.   THE RELEASE OF FLSA CLAIMS IS APPROPRIATE...................................49

   C.   THE RELEASE OF PMWA CLAIMS IS APPROPRIATE ...............................50

VI.    THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE
       APPROVED ................................................................................................................51

VII.   J.P. WARD & ASSOCIATES, LLC SHOULD BE APPOINTED AS CLASS COUNSEL
       TO THE SETTLEMENT CLASS AND SUB-CLASS MEMBER GROUPS.................54

VIII.  CONCLUSION...............................................................................................................57

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Acevedo v. BrightView Landscapes, LLC*,
   2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) ...........................................................35

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...........................................................................43, 44, 45

*Austin v. Pennsylvania Dep't of Corrs.*,
   876 F. Supp. 1437 (E.D. Pa. 1995) ...........................................................27

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994)...........................................................39, 40, 41

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998)...........................................................37

*Bernhard v. TD Bank, N.A.*,
   2009 WL 3233541 (D. N.J. Oct. 5, 2009)...........................................................30

*Bowen v. UPMC*,
   GD-21-2075 (Mar. 9, 2021)...........................................................54

*Brown v. TrueBlue, Inc.*,
   2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) ...........................................................20

*Brumley v. Camin Cargo Control, Inc.*,
   2012 WL 1019337 (D. N.J. Mar. 26, 2012)...........................................................20, 21

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...........................................................26, 33

*In re Chickie's & Pete's Wage and Hour Litig.*,
   2014 WL 911718 (E.D. Pa. Mar. 7, 2014)...........................................................20

*In re Corel Corp. Secs. Litig.*,
   206 F.R.D. 533 (E.D. Pa. 2002)...........................................................37

*Cotillion v. United Refining Co.*,
   2013 WL 5936368 (W.D. Pa. Nov. 3, 2013) ...........................................................40, 41

*Cohen v. Chi Title Ins. Co.*,
   242 F.R.D. 295 (E.D. Pa. 2007)...........................................................38

*Cuttic v. Crozer-Chester Med. Ctr.*,
  868 F. Supp. 2d 464 (E.D. Pa. 2012) ................................................................. 20

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................. 30

*Danvers Motor Co. v. Ford Motor Co.*,
  543 F.3d 141 (3d Cir. 2008) .............................................................................. 41

*Delandro v. County of Allegheny*,
  2008 WL 11381924 (W.D. Pa. June 18, 2008) ...................................... 38, 42, 43

*Devlin v. Ferrandino & Son, Inc.*,
  2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) ...................................................... 35

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012) .............................................................................. 43

*Dino v. Pennsylvania*,
  2013 WL 4041681 (M.D. Pa. Aug. 8, 2013) ............................................... 20, 21

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .......................................................................................... 51

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .............................................................................. 19

*Fein v. Ditech Fin., LLC*,
  2017 WL 4284116 (E.D. Pa. Sept. 26, 2017) ................................................... 51

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F. Supp. 3d 290 (E.D. N.Y. 2015) .............................................................. 32

*Galt v. Eagleville Hospital*,
  310 F. Supp. 3d 483 (E.D. Pa. 2018) ........................................................... 22, 26

*Gaskin v. Pennsylvania*,
  389 F. Supp. 2d 628 (E.D. Pa. 2005) ................................................................ 26

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008) ........................................................................ 25

*Gates v. Rohm and Haas*,
  265 F.R.D. 208 (E.D. Pa. 2010) ........................................................................ 38

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................32

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ...........................................................26

*In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)..............................................19, 21, 22, 26, 32, 33, 49

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)................................................25, 27, 32

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)........................................................................39

*Graudins v. Kop Kilt, LLC*,
    2017 WL 736684 (E.D. Pa. Feb. 24, 2017) ....................................35

*Hoxworth v. Blinder, Robinson & Co.*,
    980 F.2d 912 (3d Cir. 1992).............................................................41

*In re Ikon Office Solution, Inc. Securities Litigation*,
    209 F.R.D. 94 (E.D. Pa. 2002)................................................30, 31

*In re Ikon Office Solutions, Inc. Litigation*,
    191 F.R.D. 457 (E.D. Pa. 2000).......................................................41

*Jackson v. Southeastern Pennsylvania Trans. Auth.*,
    260 F.R.D. 168 (E.D. Pa. 2009).......................................................38

*Kapolka v. Anchor Drilling Fluids USA, LLC*,
    2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) ..................................20

*Koenig v. Granite City Food & Brewery, LTD.*,
    2017 WL 2061408 (W.D. Pa. May 11, 2017)............................34, 35

*Kotchmar v. Movie Tavern Partners, LP, et al.*,
    No. 2:15-cv-04061 (E.D. Pa. July 23, 2015) ..................................35

*Lake v. First Nationwide Bank*,
    900 F. Supp. 726 (E.D. Pa. 1995) ...................................................27

*LaChance v. Harrington*,
    965 F. Supp. 630 (E.D. Pa. 1997) ...................................................31

*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ...................................................................45

*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*,
    534 U.S. 973 (2001).....................................................................................45

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ("*In re Linerboard I*")...................28

*In re Linerboard Antitrust Litig.*,
    296 F. Supp. 2d 568 (E.D. Pa. 2003) ("*In re Linerboard II*") ...........22, 49

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) .......................................................20, 21, 24

*MacNeal v. Columbine Exploration Corp.*,
    123 F.R.D. 181 (E.D. Pa. Dec. 1, 1988) .....................................................46

*Marcus v. BMW of N.A., LLC*,
    687 F.3d 583 (3d Cir. 2012)........................................................................38

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)....................................................................................50

*In re Modafinil Antitrust Litigation*,
    837 F.3d 238 (3d Cir. 2016)........................................................................38

*Murphy v. Eyebobs, LLC*,
    638 F. Supp. 3d 463 (W.D. Pa. 2021)........................................................23

*Murphy v. Hundreds is Huge, Inc.*,
    638 F. Supp. 3d 486 (W.D. Pa. 2022)........................................................23

*In re National Football League Players' Concussion Injury Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014) ...................................................21, 23, 49

*In re Nat. Football League Players Concussion Injury Litigation*,
    775 F.3d 570 (3d Cir. 2014)........................................................................25

*New Directions Treatment Servs. v. City of Reading*,
    490 F.3d 293 (3d Cir. 2007)...................................................................43, 44

*Parks v. Portnoff Law Associates*,
    243 F. Supp. 2d 244 (E.D. Pa. 2003) .........................................................25

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005)..................................................................30

*In re Plastics Additives Antitrust Litig.*,
  2006 WL 6172035 (E.D. Pa. Aug. 31, 2006) ...........................................26

*In re: Processed Egg Products Antitrust Litig.*,
  2014 WL 12614451 (E.D. Pa. 2014) ........................................................22

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D. N.J. 1997) (“*Prudential I*”) ..................................33

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) (“*Prudential II*”).........................25, 30, 33, 37, 44, 53

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  177 F.R.D. 216 (D.N.J. 1997) (*“Prudential III”*)...................................50

*Richardson v. Fargo Bank, N.A.*,
  839 F.3d 442 (5th Cir. 2016) ....................................................................48

*Ripley v. Sunoco, Inc.*,
  287 F.R.D. 300 (E.D. Pa. June 26, 2012) ................................................43

*Savani v. Wash. Safety Mgmt. Solutions, LLC*,
  2012 WL 3757239 (D.S.C. Aug. 28, 2012)..............................................40

*Schaub v. Chesapeake & Del. Brewing Holdings*,
  2016 WL 9776070 (E.D. Pa. Nov. 14, 2016) ..........................................35

*In re School Asbestos Litig.*,
  921 F.2d 1330 (3d Cir. 1986)..............................................................19, 20

*Schwartz v. Dana Corp.*,
  196 F.R.D. 275 (E.D. Pa. 2000)...............................................................39

*Sheinberg v. Sorensen*,
  606 F.3d 130 (3d Cir. 2010).....................................................................43

*Soles v. Zartman Constr., Inc.*,
  2016 WL 3458395 (M.D. Pa. June 24, 2016) ..........................................42

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001).................................................................38, 41

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011)..............................................................................39

*Thomas v. NCO Fin. Sys.*,
    2002 WL 1773035 (E.D. Pa. July 31, 2022).......................................................21

*Tompkins v. Farmers Ins. Exch.*,
    2017 WL 4284114 (E.D. Pa. Sept. 27, 2017) ....................................................35

*In re Traffic Executive Association-Eastern Railroads*,
    627 F.2d 631 (2d Cir. 1980)..............................................................................26

*Walmart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).....................................................................................39, 40

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..........................................................19, 25, 40, 45, 46

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984)..............................................................................41

**Statutes**

29 U.S.C. § 201, *et seq.*,
    the Fair Labor Standards Act ("FLSA") ...............................................................2, 3

43 Pa. Consol. Stat. Ann. § 333.101 *et seq.*,
    the Pennsylvania Minimum Wage Act ("PMWA").................................................3

49 U.S.C. § 31105,
    the Surface Transportation Assistance Act ("STAA") .............................................2

49 U.S.C. § 31132(1),
    the Commercial Motor Vehicle Safety Act ...........................................................4

43 Pa. Stat. § 260.1 *et seq.*,
    the Wage Payment and Collection Law ("WPCL") ..............................................2, 3

29 U.S.C. § 213(b)(1),
    the Federal Motor Carrier Safety Act ...................................................................4

**Other Authorities**

Fed. R. Civ. Pro. 23(a) .................................................................................37

Fed. R. Civ. Pro. 23(a)(1) ............................................................................38

Fed. R. Civ. Pro. 23(a)(2) ............................................................................39

Fed. R. Civ. Pro. 23(a)(3) ............................................................................41

Fed. R. Civ. Pro. 23(a)(4) .......................................................................43, 53

Fed. R. Civ. Pro. 23(b)......................................................................44, 45, 46

Fed. R. Civ. Pro. 23(c) .................................................................................51

Fed. R. Civ. Pro. 23(e)(2) ............................................................................25

Fed. R. Civ. Pro. 23(g) .................................................................................53

29 C.F. R. § 782.5(b) .....................................................................................4

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,
    84 N.Y.U. L. Rev. 97, (2009) ................................................................40

Manual for Complex Litigation (Fourth) § 21.312 (Fed. Jud. Ctr. 2004)....................50

I.     INTRODUCTION

Plaintiff, Steven Jemison ("Mr. Jemison") on behalf of himself and all others similarly situated, by and through his counsel, respectfully moves this Court for preliminary approval of the proposed class and collective action settlement (the "Settlement") set forth in the Settlement Agreement (the "Agreement") (Copy attached as Exhibit D) in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Settlement, Certification of Settlement Class, Approval of Proposed Class Notices, and Scheduling of a Final Approval Hearing. Mr. Jemison, with the consent of Defendants Stat Courier, Inc. d/b/a ATM American Transportation Management & Design, Aaron Tomczak, Bruce Tomczak, and Aron Pupi (collectively, "Defendants"), requests that the Court enter an Order (the "Preliminary Approval Order") that would:

1)     Grant preliminary approval of the proposed Settlement;

2)     Certify the Settlement Class and Sub-Class Member Groups, for settlement purposes only and pursuant to the terms of the Agreement;

3)     Approve the form and content of, and direct the distribution of the proposed Initial Notice to Class Members, annexed to the Agreement as Exhibit B, and the proposed Initial Notice to Sub-Class Members, annexed to the Agreement as Exhibit C;

4)     Appoint the Claims Administrator;

5)     Appoint the law firm of J.P. Ward & Associates, LLC as Class Counsel for the Settlement Class and Sub-Class Member Groups, and;

6)        Set a date for Final Approval Hearing within a duration to be determined by the Court after the date the Court enters a Preliminary Approval Order.

Class Counsel, on behalf of Mr. Jemison and a proposed Class List of Individuals, shown and described in Exhibit A, has agreed to settle all claims against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Consol. Ann. § 333.101 *et seq.*, the Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.1 *et seq.*, Common Law Wrongful Termination in Violation of the Federal Motor Carrier Safety Regulations as adopted by the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105. As stated in the Agreement, Settlement Class and Sub-Class Members that participate in this Settlement – Participating Class Members (need not take any action to participate, but should contact Claims Administrator) and Sub-Class Members (by submitting a valid and timely Claim Form) will release any claim for alleged violations of the FLSA, PMWA, and WPCL. This release is set forth in detail in the proposed Notice that will be sent to all affected individuals.

The Parties understand that the Initial Notice to Class Members will be sent to the eighty (80) employees comprising the Class Member Group, including Hourly Truck Employees, Hybrid Employees, and those designated as No List Employees. The Parties further understand that the Initial Notice to Sub-Class Members will be sent to the seventy-eight (78) employees comprising the Sub-Class Member Group, those being the Exclusive Truck Employees. After multiple lengthy and vigorous arms-length settlement negotiations, including participation in the Court mandated ADR process with mediator Sally Cimini, Esq., and following the Parties exchange of information supporting legal positions and calls between counsel, the Parties have now reached a Settlement,

2

memorialized in the Agreement, and subject to the Court's approval. Defendants have acknowledged liability to Mr. Jemison's allegations, and although they deny that their conduct was intentional, Defendant do not oppose this Motion, and support preliminary approval of the Agreement, certification of the proposed class for settlement purposes, and approval of the Initial Notice to Class Members and the Initial Notice to Sub-Class Members.

As set forth below, the proposed Settlement is the product of fully-informed, arms-length negotiations. The Agreement satisfies all of the prerequisites for preliminary approval and certification of the proposed class for settlement purposes only. The proposed Settlement is a fair, reasonable, and adequate resolution of the Action, recognizing the risks each side would have faced had the Action continued. Further, the proposed Settlement is reasonable, due to Defendants' wrongful conduct, and in light of Defendants failure to maintain adequate record keeping. For these reasons, and those fully articulated below, Mr. Jemison respectfully requests that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.

## II.      FACTUAL BACKGROUND AND STATUS OF THE LITIGATION

Mr. Jemison filed his Complaint on September 15, 2022 (the "Action"). Compl. in Civil Action, Steven Jemison v. Stat Courier, Inc., *et al*, No. 2:22-cv-01322-WSH, ECF No. 1 (W.D. Pa. Sept. 15, 2022). Mr. Jemison brought this case as a class and collective action against Defendants for their alleged violations of: (1) the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) the minimum wage and overtime requirements of the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Consol. Stat. Ann. § 333.101 *et seq.*; (3) the Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.1 *et seq.* ECF No. 1. at 8-14. Mr. Jemison alleges that Defendants violated the terms of the FLSA,

the PMWA, and the WPCL by intentionally relying upon a provision of federal regulatory authority and wrongly applying it to Defendants' drivers. *Id.*

Initially, Defendants asserted that a federal regulatory provision exempting employers from paying overtime compensation to drivers transporting goods in vehicles weighing over 10,000 pounds applied to Defendants' drivers, until Defendants admitted that the exemption did not apply and that they should have been paying overtime. Bruce Tomczak Dep. 72:23-81:23 (July 19, 2024). Specifically, Mr. Jemison alleges that Defendants: (1) failed to pay required overtime compensation; (2) terminated him in retaliation for asking for his pay stubs, confirming the agreed-upon rate of $18.50, and reporting unsafe trucks; (3) failed to pay Mr. Jemison his required overtime wages, and; (4) failed to pay Mr. Jemison his correct hourly wage of $18.50. ECF No.1 at 8-20. Defendants acknowledged the dispute with Mr. Jemison over his true base pay, compromising with Mr. Jemison by giving him a raise to $18.50 an hour. Bruce Tomczak Dep. 22:9-23:24 (July 19, 2024).

The federal Motor Carrier Safety Act exempts certain employers satisfying particular criteria from paying overtime compensation to employees driving specific vehicle types with a Gross Vehicle Weight ("GVW") over 10,000 pounds. 29 U.S.C. § 213(b)(1). Bruce Tomczak Dep. 79:4-81:23. Specifically, to qualify the employee-driver must be: (1) driving a vehicle weighing more than 10,000 pounds, including large trucks tractor trailers, and box trucks, which is; (2) used in interstate commerce, and is; (3) made or used to transport eight (8) or more people for compensation, made or used to transport fifteen (15) or more people for no compensation, or used to transport sufficient quantities of hazardous materials. 29 C.F.R. § 782.5(b); 49 U.S.C. § 31132(1); Bruce Tomczak Dep. 81:7-81:23. After filing his Complaint in Civil Action, a Summons was issued by the Court for Stat Courier, Inc. to appear in this case, and the Court issued a Notice

of Alternative Dispute Resolution ("ADR") Designation. Summons, ECF No. 2; Not., ECF No. 3. The Court then issued a Meet and Conferral Order requiring the Parties to attempt to obviate any pleading deficiencies before Defendant filing a motion to dismiss. Ord., ECF No. 4. Then, Mr. Jemison sought Praecipes to Issue Summons for Aron Pupi, Aaron Tomczak, and Bruce Tomczak, which the Court issued. Praecipe to Issue Summons, ECF No. 5-7; Summons Issued, ECF No. 8. Next, the Parties waived service for all Defendants by executing a Waiver of the Service of Summons Form. Waiver of the Service of Summons, ECF No. 9. After Defense Counsel entered his appearance, Defendants moved to deposit funds with the Court representing Defendants' total liability in an Offer of Judgment, which allegedly totaled no more than $7,689.88. Not. of Appearance, ECF No. 10; Mot. to Deposit Funds, ECF No. 11. Defendants then filed a Disclosure Statement providing that neither Stat Courier nor any affiliate publicly issues shares or securities. Disclosure Statement, ECF No. 12. Simultaneously, Defendants moved for a time extension to respond to Mr. Jemison's Complaint, which the Court granted along with Defendants' Motion to Deposit Funds. Mot. for Time Ext., ECF No. 13; Ord. on Mot. for Time Ext. to File Answer, ECF No. 14; Ord. on Mot. to Deposit Funds, ECF No. 15. Mr. Jemison then moved for leave to amend his Complaint, which the Court granted. Rule 15(a)(2) Mot. for Leave to File First Amend. Compl., ECF No. 16; Ord. on Mot. for Leave to File Amend. Compl., ECF No. 17. Subsequently, Defendants filed a Motion to Dismiss, arguing that Mr. Jemison's claims became moot. Defendants' Mot. to Dismiss, No. 18; Br. in Supp. of Defendants' Mot. to Dismiss, ECF No. 19.

Simultaneously, Mr. Jemison filed his First Amended Complaint, where he modified his Complaint to distinguish the facts underlying Mr. Jemison's individual claims from those of Class and Sub-Class Members and assert additional class claims. First Amend. Compl. in Civil Action, Jemison v. Stat Courier, Inc., No. 2:22-cv-01322-WSH, ECF No. 20 at 8-11, 25-31 (W.D. Pa. Dec.

5, 2022). Mr. Jemison claimed Defendants excused their failure to pay overtime by intentionally relying on errors in the provisions of the federal Motor Carrier Safety Act exempting an employer's overtime obligations for drivers of certain vehicles weighing over 10,000 pounds, and also asserted claims of retaliatory termination for reporting violations of truck maintenance regulations and for Defendants failing to pay overtime. First Amend. Compl., ECF No. 20 at 19-31; Bruce Tomczak Dep. 9-17:9-24. In fact, Defendants explained the basis for their belief that the federal Motor Carrier Safety Act exempted them from paying overtime by, in part, stating that it was their belief that the vehicle's laden weight determined whether it qualified under the Act, rather than the unladen weight. Bruce Tomczak Dep. 50:2-56:11 (July 19, 2024). Defendants ignored Mr. Jemison's complaints and his reports about unsafe trucks, until Defendants could ignore him no longer, and Defendants terminated Mr. Jemison in retaliation. First Amend. Compl., ECF No. 20 at 19-31. In fact, Defendants clarified their present understanding of the federal Motor Carrier Safety Act's requirements, that the employee drives a vehicle over 10,000 pounds during the week in which they would be entitled to overtime and actually incur overtime. Bruce Tomczak Dep. 81:7-81:23. To this end, Bruce Tomczak contended it was the vehicle's 'laden' weight that determined whether the driver of a vehicle qualified for an overtime exemption under the Act. Bruce Tomczak Dep. 50:2-53:4. On behalf of Class and Sub-Class Members, Mr. Jemison and Class Counsel disagree with Defendants' contention that it had no overtime obligations. Bruce Tomczak Dep. 54:22-56:11. Next, on December 7, 2022, the Court filed a Notice informing the Parties of the Telephonic Conference arrangements regarding Defendants' motion to dismiss and issued an order setting a date for the Telephonic Status Conference for December 16, 2022. Not., ECF No. 21; Ord., ECF No. 22.

After prior counsel filed his appearance, the Court issued an Initial Scheduling Order and an order directing the briefing schedule for responding to Defendants' Motion to Dismiss. Not. of Appearance, No. 2:22-cv-01322-WSH, ECF No. 21 (W.D. Pa. Dec. 7, 2022); Initial Scheduling Ord., No. 2:22-cv-01322-WSH, ECF No. 24 (W.D. Pa. Jan. 9, 2023); Ord., No. 2:22-cv-01322-WSH, ECF No. 25 (W.D. Pa. Dec. 16, 2022). On January 5, 2023, Mr. Jemison filed a brief in opposition to Defendants' Motion to Dismiss, to which Defendants filed their brief in reply. Br. in Opp. to Defendants' Mot. to Dismiss, ECF No. 26; Br. in Reply, ECF No. 27. Next, the Court filed a transcription of the results of the Status Conference held on December 16, 2022. Not. of Filing of Off. Transc., ECF No. 28. After nine months passed on the docket, prior counsel Attorney Sugiura ceased employment with J.P. Ward & Associates, LLC, and filed a Motion to Withdraw from the case, though J.P. Ward & Associates, LLC, would still represent Mr. Jemison, which the Court granted. Mot. to Withdraw as Attorney, ECF No. 29; Ord., ECF No. 30.

The Court then issued another Order denying Defendants' Motion to Dismiss as moot, determining Mr. Jemison's First Amended Complaint as being operative, and stating Defendants must answer or respond by October 17, 2023, on which day Defendants responded by filing their Answer. Ord., No. 2:22-cv-01322-WSH, ECF No. 31 (W.D. Pa. Sept. 26, 2023); Ans., 2:22-cv-01322-WSH, ECF No. 32 (W.D. Pa. Oct. 17, 2023). The next day, the Court issued an Initial Scheduling Order, setting the telephonic Initial Case Management Conference for November 13, 2023, and directing the parties to file a Rule 26(f) report and ADR stipulation by November 6, 2023. Ord., ECF No. 33. Then, on November 6, 2023, Mr. Jemison filed the Stipulation Selecting ADR Process, along with the Joint Rule 26(f) Report. Stip. Sel. ADR, ECF No. 34; Joint Rule 26(f) Report, ECF Nos. 35. Defendants then moved to continue the Initial Case Management Conference, which the Court granted and rescheduled the Conference for December, 11, 2023.

Consent Mot., ECF No. 36; Case Management Ord., ECF No. 37. The Initial Case Management Conference was held and the following day the Court issued an Order implementing Federal Rule of Evidence 502(d) pursuant to Local Rule 16.1(D), along with a Case Management Order setting class certification discovery and briefing deadlines. Minute Entry, ECF No. 38; Ord., ECF No. 39; Ord., ECF No. 40. Then, the next day Mr. Jemison filed a Joint Rule 15 Stipulation. Stip., ECF No. 41.

Mr. Jemison then filed a Second Amended Complaint to which Defendants answered timely. Second Amend. Compl., 2:22-cv-01322-WSH, ECF No. 42 (W.D. Pa. Dec. 12, 2023); Answer to Second Amend. Compl., 2:22-cv-01322-WSH, ECF No. 43 (W.D. Pa. Jan. 2, 2024). The Parties held multiple mediation sessions beginning July 24, 2024, though resolution was not initially reached. Notice of Mediation, ECF Nos. 44; Report of Mediation, ECF No. 59; Report of Mediation, ECF No. 62; Report of Mediation, ECF. No. 63. Mr. Jemison then filed a Motion to Certify the Class on July 15, 2024, accompanied by a supporting brief and exhibits, which was denied without prejudice pending formal briefing. Mot. to Cert., ECF No. 48; Br. in Supp., ECF No. 49; Exhibits, ECF No. 50–54 (W.D. Pa. July 15, 2024); Ord., 2:22-cv-01322-WSH, ECF. 58 (W.D. Pa. July 26, 2024). As the discovery process began, the Parties continued to request and receive extensions of discovery and mediation deadlines throughout late 2024 and early 2025. Joint Mot. Ext. Time, ECF No. 45; Ord., ECF No. 47; Joint Mot. Ext. Time, ECF No. 57; Ord., ECF No. 58; 3d Mot. Ext. Time, ECF No. 60; Ord., ECF No. 61; 4th Mot. Ext. Time, ECF No. 65; Ord., ECF No. 66. Later, Class Counsel changed for Mr. Jemison, although J.P. Ward & Associates still represented Mr. Jemison. Mot. to Withdraw as Attorney, ECF No. 67; Ord., ECF No. 68; Not. of Appearance, ECF No. 69. Next, the Court canceled the Post Discovery Status Conference and rescheduled it and that the Parties will update the Court on the case's status by May 16, 2025. Ord.,

ECF No. 70. Then, Mr. Jemison filed a Joint Status Report on the Parties' progress reaching settlement. Status Rep., ECF No. 71. The Court then ordered a telephonic Status Conference between the Parties and the Court. Ord., ECF No. 72. Following a telephonic conference on May 21, 2025, the Court ordered that a motion for class certification for settlement purposes, or a further joint status report, be filed by June 23, 2025. Ord., ECF No. 72; Minute Entry, ECF No. 73; Ord., ECF No. 74. Pursuant to the Court's Order, Mr. Jemison then submitted a Status Report, where the Parties indicated a desire to move forward with Settlement, but indicated that some outstanding issues remained, in particular the issue of attorneys' fees, costs, and expenses. Status Rep., ECF No. 75. The Court then directed Mr. Jemison to file a Motion for Preliminary Approval of the class settlement by July 14, 2025, with a motion for attorneys' fees and costs to follow by September 22, 2025. Ord., ECF No. 76. On July 15, 2024 the Court granted a final motion to extend the deadline to file the Motion for Preliminary Approval, permitting this Motion to be filed on or before July 18, 2025. Ord., ECF No. 77.

## III.    SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT

### A.  The Proposed Settlement Class

By operation of the Settlement Agreement, the Parties stipulate to certifying the Class and Sub-Class Member Groups under Rule 23 for settlement purposes only, which includes all current and former individuals employed by Defendants on or after September 15, 2019 to December 31, 2025, and whose employment consisted of regularly driving non-exempt vehicles on a weekly basis, including all those Class Members listed and identified in the Class List attached here in Exhibit A as "Hourly Truck Employees," "Hybrid Employees," and "No List Employees," as well as those Sub-Class Members listed and identified as "Exclusive Truck Employees."

### B. The Proposed Class Notice

The Settlement Agreement provides for the dissemination of the Initial Notice to Class Members and the Initial Notice to Sub-Class Members. Both Notices shall provide the Settlement Class and Sub-Class Members with all the relevant information needed for Class and Sub-Class Members regarding the Settlement, as well as the contact information for Class Counsel.

No more than twenty-one (21) days after the Court grants the Motion which this Brief supports and entering the Preliminary Approval Order, Defendants shall provide the Claims Administrator with the Class List identifying all the Class and Sub-Class Members in electronic form, and containing the following information for the named Plaintiff, Mr. Jemison, and for each and every Class and Sub-Class Member: name, last known address, Social Security Number, actual hourly rate of pay paid by Defendants, total number of hours worked, as determined by Class Counsel following a lengthy examination of Defendants' record and timekeeping system, the dates during which they were employed by Defendants at any time during the relevant Class Period, and any other required payroll deductions as set forth within Defendants' payroll records, such as standard payroll deductions, tax liens, and child support. No more than thirty (30) days after receiving the Class List, the Claims Administrator will mail the Initial Notice to Class Members and the Initial Notice to Sub-Class Members via First Class Mail to each Class and Sub-Class Member.

Both Initial Notices shall include the Initial Notice to Class Members and the Initial Notice to Sub-Class Members in the form as is attached in Exhibits B and C, respectively, to this Motion for Preliminary Approval. The Initial Notices shall: (i) describe the settlement terms and nature of payments to Class and Sub-Class Members, as well as Administrative Costs and Attorneys' Fees and Costs, and the claims process and distribution method of settlement proceeds; (ii) inform Class

Members that no action is required for them to obtain their share of Fund A, but that Class Members should still make efforts to contact the Settlement Administrator to ensure that their personal information on file with SCI such as their name and address remains current; (iii) inform Sub-Class Members that they must submit a Claims Form and a Consent to Join Settlement Form in order to obtain a share of the proceeds of Fund B, and; (iv) advise the Class and Sub-Class Members on whether their share of the proceeds of Fund A or Fund B, whichever is applicable, is subject to any required payroll or other deductions such as tax liens or child support.

The Claims Administrator shall bear the obligation of establishing and maintaining a settlement website, which includes a Class Notice, along with any other documents related to the Action, including the Settlement Agreement with all of its Exhibits. The form and method of Notice agreed to by the Parties satisfies all due process considerations and meets all requirements of Federal Rule of Civil Procedure 23. The proposed Class Notice describes in layman's terms: (i) the Settlement's terms, nature, and operation; (ii) the nature and extent of the release of all claims alleged in this action, along with the exclusion of any claims that might be maintained by Class and Sub-Class Members in their individual capacities; (iii) Mr. Jemison's Service Award, and the Parties agreement to resolve attorneys' fees and costs in the future, over and above the total Settlement proceeds of Fund A and Fund B; (iv) the timing and procedure for engaging in the objection process; (v) the form and method by which a Class and/or Sub-Class Member may opt-out of and exclude themselves from the Settlement; (vi) the date and place for the Final Approval Hearing.

### C.  Monetary Terms

The proposed total "Settlement Amount" consists of the proceeds from Fund A and Fund B for a combined total of one hundred thirty-three thousand seven hundred fifty-seven dollars and

twenty-four cents ($133,757.24) (the "Settlement Amount"). Fund A will be used to pay Class Members' claims, whereas Fund B will be used to pay Sub-Class Members' claims, and will be distinguished as follows:

1. Class Members' claims - "Fund A" – (Non-Reversionary): PMWA Settlement Class Members, who drove both exempt and non-exempt vehicles, described more fully in the Class List as "Hourly Truck Employees," "Hybrid Employees," and "No List Employees," and will receive a *pro tanto* share of eighty-six thousand six hundred sixty-three dollars and thirty-two cents ($86,663.32) representing all actual calculated owed overtime wages for the Class Members, plus 25% liquidated damages. This fund is non-reversionary.

2. Sub-Class Members' claims - "Fund B" – (Reversionary): PMWA Opt-In Sub-Class Members, who drove non-exempt vehicles only, described more fully in the Class List as "Exclusive Truck Employees" will receive a *pro tanto* share of forty-seven thousand ninety-three dollars and ninety-two cents ($47,093.92) which Defendants will pay into the common fund for this class, representing all actual calculated owed overtime wages for the Sub-Class Members. Any unclaimed funds after the claims period shall revert to Defendants.

In accordance with the Settlement Agreement, the Claims Administrator shall distribute proceeds from the total Settlement Amount pursuant to the formula as follows: Payments will be calculated based on each Class and Sub-Class Member's actual unpaid overtime wages and any applicable statutory penalties, using a blended hourly rate from September 15, 2019, to December 31, 2025, less any required payroll deductions and distributed to the Class and Sub-Class Members.

Defendants will pay the Settlement Amount to the Claims Administrator, who will then distribute settlement payments to each Class Member regardless of any action taken. However, Class Members are encouraged to timely contact the Claims Administrator to ensure that their name and address on file with SCI remains correct and that there is no need to submit a Change of Address Form.

Defendants will pay the Settlement Amount to the Claims Administrator, who will then distribute settlement payments to each Sub-Class Member that properly submits a timely Claims Form and a timely Consent to Join Settlement Form (enclosed with this Notice as Exhibit A). The Parties have agreed to an approach that they believe fairly allocates the Settlement Amount between and among the Class and Sub-Class Members.

Additionally, the Claims Administrator will make all legally mandated payroll deductions from the total Settlement Amount allocated to Class Members as Fund A and, likewise, the allocation to Sub-Class Members as Fund B. The Initial Notices will indicate if SCI's payroll records reflect that there are any further additional legally mandated or otherwise required deductions that must take place (e.g., garnishments, tax liens, child support payments). This notation in the Initial Notices will permit an individual to contest the propriety of this required deduction.

Pursuant to the Settlement Agreement, Class Counsel agrees to seek Court approval for payment of a Service Award to the named Plaintiff, Steven Jemison, in the amount of five thousand dollars ($5,000). This Service Award shall be additional to, separate and apart from and over and above the total Settlement Amount to be distributed to Class and Sub-Class Members in allocations designated as Fund A and Fund B, respectively, and shall not be opposed by Defendants. The Initial Notices will apprise Class and Sub-Class Members of this request.

The Initial Notices will apprise the Members that the Parties intend to resolve the issue of Class Counsel's attorneys' fees, costs, and expenses, separate and apart and over and above the total Settlement Amount comprised of Fund A and Fund B, in a separate agreement, pursuant to the filing of a Attorneys' Fees and Costs Petition, the terms of which will be outlined more specifically in the relevant filing to be made on September 22, 2025.

Class Counsel will petition the Court for an award of reasonable attorneys' fees and litigation costs. Any such award will be paid separate and apart from and over and above the amounts allocated to Fund A (the non-reversionary common fund for Class Members) and Fund B (the reversionary fund for Sub-Class Members) and will not reduce or diminish the compensation or damages to which any Class or Sub-Class Member is entitled. The requested fees and costs will be determined by the Court pursuant to the lodestar method, upon application supported by declarations and billing records, and will be subject to Court approval.

Participating Class and Sub-Class Members shall have one hundred and eighty (180) days to negotiate their settlement check and the deadline for the same, along with the applicable release, will be included on the back of the check as well as in the cover letter sent with the check. In addition, any checks not properly negotiated and cashed within one hundred and eighty (180) days of issuance shall be deemed voided. All unclaimed funds due to voided checks will be subject to a *cy pres* distribution.

The allocation for both Class and Sub-Class Members is based on the actual overtime wages to which those Class and Sub-Class Members were entitled, calculated from SCI's payroll records. For Class Members receiving the Initial Notice to Class Members, those owed overtime wages are combined with a 25% liquidated damages penalty to arrive at the $86,663.32 comprising Fund A. Accordingly, the proceeds from Fund A will be distributed on a *pro tanto* basis with the

total amount of hours employees have worked, which Defendants will pay into the common fund for this Class, representing all actual calculated overtime wages owed to Class Members. Any unclaimed funds after the claims period shall revert to Defendants.

For Sub-Class Members receiving the Initial Notice to Sub-Class Members, those owed overtime wages are calculated to arrive at the $47,093.92 comprising Fund B. The proceeds from Fund B will then be distributed on a *pro tanto* basis with the amount of hours employees have worked, which Defendants will pay into the common fund for the Sub-Class, representing all actual calculated overtime wages owed to Sub-Class Members. Any unclaimed funds after the Claims Period expires shall revert to Defendants.

Each Class and Sub-Class Member that does not opt-out and request exclusion from the Settlement, is deemed to fully and finally release and discharge Defendants and its current, former, and future affiliates (including without limitation parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives, from only the wage and hour claims asserted in this lawsuit, **but not unrelated claims like discrimination or harassment**. This covers any other wage and hour claims not arising in this lawsuit, including but not limited to, claims for minimum wage, deductions from pay, meal and rest breaks, and retaliation as well as related penalties and interest under any and all applicable state and federal laws, as well as common law.

### D. Dismissal and Release of Claims

On the Effective Date, all participating Class and Sub-Class Members that have not otherwise opted-out or objected to the proposed Settlement shall be deemed to have forever

released any and all federal and Pennsylvania wage-and-hour related claims against Defendants that have been alleged in this action. This does not include any individual claims for harassment or discrimination which Class and/or Sub-Class Members may be able to allege, from September 15, 2019 until December 31. 2025, and through the date of entry of the Court's Preliminary Approval Order.

This Dismissal and Release includes any claims pursuant to the FLSA, the PMWA, or Pennsylvania's WPCL that each Class and/or Sub-Class Member may be able to allege and that were related to any of the facts or claims alleged or could have been alleged in this Action. Members of this Action that are not participating Class and Sub-Class Members, but who have not executed a valid Opt-Out Form shall be deemed to have forever released any and all Pennsylvania wage-related claims against Defendants. *Id.* As noted above, this release is fully described in the proposed Class Notice.

### E. Proposed Schedule Following Preliminary Approval

Mr. Jemison, in accordance with Defendants' consent, proposes that along with this Court granting preliminary approval of the Settlement Agreement, the Court should adopt the schedule set forth in more detail below in the Preliminary Approval Order, that allows the Parties sufficient time to effectuate the various steps in the settlement approval process under the Settlement Agreement.

### EVENT TIMING

1. **Mailing of Class Notices:** No more than thirty (30) days following entry of the Preliminary Approval Order certifying and approving the Settlement Class and Sub-Class Members, the Initial Notice to Class Members and the Initial Notice to Sub-Class Members must be mailed out. Defendants and Class Counsel must provide Class and Sub-Class Member

information to the Claims Administrator, as set forth in Section V of the Settlement Agreement, no more than twenty-one (21) days after the Preliminary Approval Order is entered. As set forth in Section V of the Settlement Agreement, the Claims Administrator will mail the Initial Notices within thirty (30) days of receiving the Class List.

2.    **Deadline for Filing Objections to the Settlement:** This Court shall set the deadline for objecting to this Settlement Agreement, as being one hundred and eighty (180) days after the Initial Notices are mailed out.

3.    **Deadline for Submitting Requests for Exclusion from the Settlement:** This Court shall set the deadline for submitting requests for opt-out or otherwise be excluded from the Settlement, as being ninety (90) days after the Initial Notices are mailed out.

4.    **Final Approval Hearing:** The Final Approval Hearing shall be held within one hundred and eighty (180) days following entry of the Preliminary Approval Order after provision of the Initial Notices, and subject to extension by the Court, but that the deadline for submitting claims by the Class and/or Sub-Class Members shall be at least seven (7) days prior to the date set for the Final Approval Hearing.

As set forth below, Mr. Jemison submits, with Defendants' consent, that the Settlement Agreement satisfies all the criteria for preliminary approval, and falls well within the range of reasonableness. Accordingly, Mr. Jemison requests that the Court grant the requested relief.



## IV.    ARGUMENT

### A.  THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED BY THE COURT

The Third Circuit Court of Appeals favors the resolution of collective and class action litigation through settlement. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (holding that "[s]ettlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (finding ". . . an overriding public interest in settling class action litigation, and it should therefore be encouraged . . ."); *In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (holding that "[t]he law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting that the Third Circuit has a policy of "encouraging settlement of complex litigation that otherwise would linger for years").

Applying this to the instant proposed Settlement, granting this Motion for Preliminary Approval facilitates the conservation of judicial resources by avoiding further litigation. Moreover, this satisfies a clear public interest in assisting Defendants in shouldering the liability reimbursing Class and Sub-Class Members by approving the settlement.

### 1.  Legal Standard for Granting Preliminary Approval of the Settlement of Claims under the FLSA and the PMWA

In order to obtain approval of a FLSA collective action, the only determination to make is that the compromise reached "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's

overreaching." *See Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *2 (W.D. Pa. Oct. 22, 2019) (citing *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); *see also Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *5, *9 (D. N.J. Mar. 26, 2012) (*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). The United States District Court for the Eastern District of Pennsylvania clarified the issue by stating "[a]lthough the Third Circuit has not yet specifically addressed what factors district courts should consider in evaluating settlement agreements under the FLSA, district courts in this Circuit has referred to the considerations set forth in *Lynn's Food Stores*." *See In re Chickie's & Pete's Wage and Hour Litig.*, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014) (citing *Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *3 (M.D. Pa. Sept. 25, 2013); *Dino v. Pennsylvania*, 2013 WL 4041681, at *3 (M.D. Pa. Aug. 8, 2013).

Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement of a collective action resolves a bona fide dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." *Lynn's Food Stores*, 679 F.2d 1350 at 1354. To determine if a settlement agreement is fair and reasonable, "courts generally proceed in two steps, first considering whether the agreement is fair and reasonable, then considering whether it furthers or 'impermissibly frustrates' the implementation of the FLSA in the workplace." *Dino*, 2013 WL 4041681, at *3 (quoting *Brumley*, 2012 WL 1019337, at *5, *9.

In addition to claims under the FLSA, to obtain approval of a PMWA putative class action, the standard of review involves an evaluation to see whether the proposed settlement is fair, reasonable, and adequate, the standard of which is lowered at the preliminary approval stage to determine whether the "proposed settlement discloses grounds to doubt its fairness or other

obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of approval." *In re National Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 715 (E.D. Pa. 2014) (quoting from *Thomas v. NCO Fin. Sys.*, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2022). In making that evaluation, the Third Circuit Court examines four (4) factors to find that "an initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation, and; (4) only a small fraction of the class objected." *In re National Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d at 715 (quoting from *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784, 785-86 (3d Cir. 1995). The factors listed by the Third Circuit from *In re Gen. Motors Corp.* are intended to ensure that the settlement process is conducted fairly and that adequate protection exists for interests of all class members and class member groups. *In re Gen. Motors Corp.*, 55 F.3d at 785-86. Accordingly, if the court finds that these factors are met, there is an initial presumption of fairness. *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 576 (E.D. Pa. 2003) ("*In re Linerboard II*") (citing *In re Gen. Motors Corp.*, 55 F.3d at 785).

In particular, the court made such a finding after observing the Parties putting extensive efforts in working together through multiple days of arms-length negotiations between counsel, conducting a detailed factual investigation, and the fact that no class members objected or opted-out from the settlement. *Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018). After observing that those factors indicated a presumption of fairness, the court granted preliminary approval of the settlement after ensuring that the release clause and confidentiality clause was appropriately modified by the Parties such that it extended the response period for class

members, and so this meant that the Settlement Agreement, "the agreement as a whole is consistent with, and will not frustrate, the purposes of the FLSA." *Galt*, 310 F. Supp. 3d at 495. Similarly, the court weighed the same factors as from the *Galt* Court and granted preliminary approval because, the court found that the proposed settlement fell within the range of reasonableness for settlement of claims. *In re: Processed Egg Products Antitrust Litig.*, 2014 WL 12614451, at *2 (E.D. Pa. 2014). In essence, the court found the proposed settlement fell within the range of reasonableness for settling similar claims because this includes other similar contextual settlements with this litigation along with the reasonable expectation that Mr. Jemison and the Class and Sub-Class Member Groups will participate. *Id.*

Moreover, the applicable standards for granting preliminary approval are generally less rigorous than those required for the final approval stage. In determining whether to grant preliminary approval, the court must determine whether the proposed settlement discloses grounds or some basis to doubt its fairness or any other obvious deficiencies, like giving preferential treatment to class representatives or providing an award of unreasonable and excessive attorneys' fees and costs. *In re National Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d at 715. This inquiry is usually based on information already known, supplemented by briefs, motions, or informal presentations by parties. *Id.*

Despite a presumption of fairness, the court has a fiduciary obligation to protect the rights of absent class members. This obligation carries a requirement that the court closely scrutinize the fairness of a proposed class settlement, particularly when settlement negotiations precede certification of the Class and Sub-Class Member Groups, and preliminary approval for settlement and certification are sought simultaneously. *Murphy v. Eyebobs, LLC*, 638 F. Supp. 3d 463, 480 (W.D. Pa. 2021); *Murphy v. Hundreds is Huge, Inc.*, 638 F. Supp. 3d 486, 503-04 (W.D. Pa. 2022).

21

This heightened standard of scrutiny ensures that Class Counsel has prosecuted the class action in sustained advocacy throughout the proceedings and has protected the interests of all Class and Sub-Class Members. *Eyebobs*, 638 F. Supp. 3d at 480; *Murphy*, 638 F. Supp. 3d at 503-04. Accordingly, the legal standard of review for granting preliminary approval of settlement of class action claims under the PMWA involves a thorough examination of the fairness, reasonableness, and adequacy of the proposed settlement, informed by established factors and judicial scrutiny to protect the interests of all Class and Sub-Class Members.

After applying the foregoing to this Settlement, the proposed Settlement is a fair and reasonable resolution of the bona fide dispute concerning the applicability of FLSA provisions to Defendants' drivers, and litigation has become extensively involved with Defendants filing an Answer and engaging in lengthy and substantial discovery. Moreover, by the terms of the *Lynn Food Stores* Court, the proposed Settlement Agreement resolves a bona fide dispute in the FLSA because it reflects a reasonable compromise over issues like whether the terms of the FLSA requiring payment of overtime compensation applies to employees like Defendants' drivers. *See Lynn Food Stores, Inc.*, 679 F.2d at 1354; Bruce Tomczak Dep. 97:19-98:15. To that end, the proposed settlement agreement should be preliminarily approved because it is fair and reasonable and it facilitates rather than hinders the application of the FLSA to Defendants' workplace.

Similarly, the proposed settlement is fair, reasonable, and adequate in its resolution of claims brought under the PMWA. Moreover, there is no preferential treatment present of either Mr. Jemison or any other Class or Sub-Class Members and does not provide for excessive attorneys' fees while remaining within the range of reasonableness. Additionally, there are no indications of obvious deficiencies present or any other reason to doubt the fairness of the instant proposed settlement. This means the proposed settlement should be preliminarily approved under

the PMWA because the negotiations between Class Counsel and Defense Counsel occurred at an arm's length, and have already completed discovery, including the depositions for the Defendants as well as Mr. Jemison. Additionally, Class Counsel has significant relevant experience and no Class or Sub-Class Members have yet objected to the proposed settlement. As this establishes a presumption of fairness, this means the Court should grant preliminary approval of the proposed Settlement because the settlement process was fairly conducted and negotiated such that adequate protections exist for the interests of all Class and Sub-Class Members in the proposed Settlement.

## 2. Standard for Granting Preliminary Approval of Class Action Settlements

Under Rule 23(e) of the Federal Rules of Civil Procedure, judicial approval is required for settling class actions. Preliminary approval is the first step in the process to finalizing settlement approval in a class action. The next step is the dissemination of a notice of settlement to all Class and Sub-Class Members. The third and last step before settlement approval is the Final Approval Hearing or the Final Fairness Hearing. Once the court determines that class certification is appropriate, the court next must consider whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(2); *see also In re Nat. Football League Players Concussion Injury Litigation*, 775 F.3d 570, 581 (3d Cir. 2014).

The Third Circuit Court has emphasized that the most relevant consideration when determining whether a proposed settlement is within a "range of reasonableness" is to find, in other words, whether the proposed settlement is fair and reasonable under the circumstances. *In re Prudential Ins. Co. of Am Sales Practices Litig.*, 148 F.3d 283, 322 (3d Cir. 1998) ("*Prudential II*"). To determine whether the settlement is fair, reasonable and adequate under Rule 23(e), courts in the Third Circuit apply the nine-factor test announced by the Third Circuit Court of Appeals, using the following factors: (1) [t]he complexity, expense, and likely duration of the litigation; (2)

the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in the light of the best possible recovery, and; (9) the range of reasonableness of the settlement fund to the possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), *reaffirmed in*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 534-35 (3d Cir. 2004). As stated above, since the instant Action is presently at the preliminary approval stage, courts need not address every factor, because "the standard for preliminary approval is far less demanding." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 n. 7 (E.D. Pa. 2008).

The issue to be determined on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. *Parks v. Portnoff Law Associates*, 243 F. Supp. 2d 244, 249 (E.D. Pa. 2003). If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the Parties to give notice of the proposed settlement to the class members. *In re Plastics Additives Antitrust Litig.*, 2006 WL 6172035, at *10 (E.D. Pa. Aug. 31, 2006); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Alternatively, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

In this Circuit, a settlement is entitled to an initial presumption of fairness where it resulted from arm's-length negotiations between experienced counsel, there was sufficient discovery, and there were no objectors and only a small percentage of opt-outs. *Galt v. Eagleville Hosp.*, 310 F.

Supp. 3d at 493; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233, n. 18 (3d Cir. 2001); *In re Gen. Motors Corp.*, 55 F.3d at 785. In essence, this presumption of fairness operates as it does in the Third Circuit, that:

> [i]f the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class members of a formal fairness hearing, at which evidence may be presented in support of and opposition to the settlement.

*Gaskin v. Pennsylvania*, 389 F. Supp. 2d 628, 630 (E.D. Pa. 2005); *see also In re Gen. Motors Corp.*, 55 F.3d at 785-86.

Applying these principles to the instant Settlement, Class Counsel understands that the terms of the proposed Settlement in this case are fundamentally fair, reasonable and adequate, especially when considering the risk, expense, complexity and delay associated with further litigation. In making its determination of these risks, the Court should give deference to the opinions of Class Counsel, who have researched the issues and are familiar with the facts of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) (finding that "[i]n determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class."); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) (noting in evaluating the fairness of the settlement that "[s]ignificant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class.'"). Additionally, as addressed in more detail below, the proposed Settlement satisfies the *Girch* factors; the Settlement is justified by the complexity, expense, and duration of the litigation, the present stage of proceedings and that discovery is completed, the attendant risks of trial, establishing damages, and maintaining the class action through trial, as well as the range of reasonableness in total and the

ability of Defendants to withstand a greater judgment. *See Girch*, 521 F.2d at 157. Therefore, analyzing the proposed Settlement under the *Girch* factors demonstrates this Court should grant preliminary approval of the proposed Settlement.

### a)  Complexity, Expense and Likely Duration of the Litigation

The Parties have zealously advocated for their clients in diligently pursuing litigation from both of the Parties. At the inception of this case, Defendants were prepared to contest Mr. Jemison's claims and defend their positions, until an admission was made that the exemption upon which Defendants relied in the Federal Motor Carrier Safety Act did not apply to Defendants' drivers. Bruce Tomczak Dep. 97:3-98:15 (quoting Bruce Tomczak as saying, "Q. That makes sense. Is it fair to say that for these folks on page 1017, that you're not disputing that they were eligible for overtime? A. No, not disputing it. Q. Okay.").

Furthermore, significant work has been done, including but not limited to: reviewing informally produced documents, interviewing Mr. Jemison and deposing the various witnesses produced by Defendants and other fact gathering, legal research and analysis of analogous cases, compilation and collation of payroll data, and participation in multiple lengthy and laborious mediation and settlement negotiation sessions. *See e.g.* Bruce Tomczak Dep. 34:7-34:17 (quoting Bruce Tomczak as saying, "Q. Is it true to say that a driver must be actually present and plug–connect their cell phone to a device in this particular vehicle in order for it to register the vehicle number? A. I believe–I believe, yes. Q. So, in a sense, this is pretty foolproof in terms of logging the precise vehicle that they used. A. I wouldn't say its foolproof, but for the most part, it is correct."); 35:7-35:15 (quoting Bruce Tomczak as saying "Q. Does 627 refer to one of the vehicles in Stat Courier's fleet? A. Uh-huh. Q. Does 627 refer to one of the vehicles in Stat Courier's fleet?

A. Yes. Q. Okay. And Would Mr. Antoine manually enter this number 627 to log which vehicle he's in? A. I do not know the answer to that.").

Moreover, if this Settlement is not approved, additional litigation will be required, with no guarantee of any benefit to the Settlement Class and/or Sub-Class Members. In all reality, given the size and nature of Defendants' wrongful conduct, measured against the assets and profit-generating capacity of Defendants' after now being compelled to pay full overtime compensation to its drivers, there is a real possibility that if this case proceeds to trial, that Mr. Jemison and the Class and Sub-Class Members would recover far less than what the proposed Settlement provides. To that end, litigation involves significant risks, not all for which one can adequately anticipate at the outset of litigation, and, as such, a trial on the merits and preparing for such a trial entails extreme expense for both Parties. Of course, the result does not end the process there since the losing party has a right to appeal. These factors weigh in favor of approving the Settlement. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 642 (E.D. Pa. 2003) ("*In re Linerboard I*") (noting that the "protracted nature of class action antitrust litigation means that any recovery would be delayed for several years," and "substantial and immediate benefits" to class members favors approval).

Applied here, the likelihood of extreme expense and complexity that would become inevitable if this case proceeded to trial weighs in favor of this factor warranting this Court to grant preliminary approval of this proposed Settlement. The extensive amounts of labor and effort invested in this Action by Class Counsel were necessitated by the record-keeping policies of Defendants and the complex nature of this task would only further aggravate and increase litigation costs were this case to proceed to trial. Therefore, in consideration of these efforts, this factor

weighs in favor of the proposed Settlement such that this Court should grant the Motion for Preliminary Approval.

### b) Reaction of the Class to the Settlement

Notice has not yet been sent to the Class Member Group and/or the Sub-Class Member Group. Accordingly, Settlement Class and Sub-Class Members have not yet had the opportunity to opine on the Settlement. As such, Class Counsel will address this factor at the final fairness hearing. Regardless, Mr. Jemison supports the proposed Settlement, and there is no reason to suspect that any Class and/or Sub-Class Member would object to the proposed Settlement.

### c) Stage of the Proceedings and the Amount of Discovery Completed

At the current stage of proceedings, the Parties have already had several substantive discussions regarding the validity of Mr. Jemison's claims and how to resolve them. The Parties have already completed discovery and deposed all the principal witnesses and Parties in this case, including Mr. Jemison, Bruce Tomczak, Aaron Tomczak, and Aron Pupi, in pursuit of a resolution. Defendants produced limited and incomplete payroll data, which required Mr. Jemison and Class Counsel to expend significant amounts of time and human resources to parse, organize, compile and collate Defendants' business records into something legible for purposes of this litigation, thus inhibiting Defendants' ability to develop an appropriate damages model. Moreover, the proposed settlement is the result of arm's length negotiations, including a mediation conference with experienced mediator Sally Cimini, Esq., which ensured that settlement negotiations were without collusion between the Parties. *See e.g.*, *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *5 (D. N.J. Oct. 5, 2009); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a

"mediator's involvement in . . . settlement negotiations help to ensure that the proceedings are free of collusion and undue pressure.").

Applying the foregoing here, this factor weighs in favor of granting preliminary approval of this Settlement. Mr. Jemison and Class Counsel have already exchanged significant amounts of discovery and have completed their depositions of Defendants' witnesses and Mr. Jemison. Accordingly, this makes the factor here weigh in favor of granting preliminary approval. *See e.g. Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (finding that the *Girsh* factor satisfied where the parties "gained such an appreciation through their exchange of some discovery" and participation in the mediation process).

### d) Risks of Establishing Liability and Damages

The proposed settlement agreement next examines the risks of establishing liability and damages in finding that "[t]hese inquiries survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Ikon Office Solution, Inc. Securities Litigation*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) (quoting *Prudential II*, 148 F.3d at 319). The *Ikon* court detailed that:

> For example, if it appears that further litigation would realistically risk dismissal of the case on summary judgment or an unsuccessful trial verdict, it is in the plaintiff's interests to settle at a relatively early stage. In contrast, if it appears that liability is extraordinarily strong, and it is highly likely that plaintiffs would prevail at trial, settlement might be less prudent. On this issue, the court should avoid conducting a mini-trial and must to a certain extent, give credence to the estimation of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action. *LaChance v. Harrington*, 965 F. Supp. at 630, 638 (E.D. Pa. 1997).

*Ikon*, 209 F.R.D. at 105 (citing *LaChance*, 965 F. Supp at 638).

Applying the foregoing to the proposed Settlement Agreement instantly, class certification will not be a contested issue, and Defendants' liability is a foregone conclusion following Defendant Bruce Tomczak's admission during a deposition. *See* Bruce Tomczak Dep. 97:3-98:15. While these issues may not be contested, Defendants still contest the notion that they intentionally intended to rely in error on the provision from the Federal Motor Carrier Safety Act justifying nonpayment of owed overtime compensation to Defendants' drivers. Bruce Tomczak Dep. 50:2-53:4. Therefore, if the proposed settlement agreement fails and the case proceeds to trial, Class Counsel will be required to try the issue of whether Defendants intended to rely on the provision at issue intentionally, thus demonstrating why this Court should grant preliminary approval of the proposed Settlement.

### e)  Risks of Maintaining the Class Action Through the Trial

District courts in the Third Circuit evaluate a settlement noting that:

> The value of a class action depends largely in the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

*In re Gen. Motors Corp.*, 55 F.3d at 817. While Mr. Jemison strongly believes that certification of the proposed Class and Sub-Class Member Groups would have been granted by the Court, there is still risk that the proposed Class and Sub-Class Member Groups would not have been certified. While Defendants have admitted liability, they may still seek to oppose certification of the Class and Sub-Class Member Groups.

Therefore, the risks associated with class certification increase the risk of maintaining the proposed class, and therefore supports settlement. *In re Global Crossing Sec. & ERISA Litig.*, 225

F.R.D. 436, 460 (S.D.N.Y. 2004) (holding that settlement was appropriate because defendants may contest class certification "thereby creating appreciable risk to the class members' potential for recovery."). Accordingly, since the risks of bringing the collective and class claims in this Action carry the potential for a failure in certifying the Class and Sub-Class Member Groups, this factor weighs in favor of granting preliminary approval for settlement of the collective and class claims in this Action.

### f)    Ability of Defendants to Withstand a Greater Judgment

It is highly likely that the proposed settlement satisfies this factor because, Defendants have already made their concerns plain that they have doubts about being able to pay the judgment resulting from a settlement; therefore, any potential for a greater judgment that might be rendered in a verdict following trial means this factor weighs in favor of preliminarily approving the proposed Settlement Agreement. *See* Bruce Tomczak Dep. 23:14-24:10 (quoting Bruce Tomczak for responding, "Q. Are you aware of any other individuals that were paid an additional rate for overtime hours that was not time and a half? A. No. Having said that there was a point in time when we changed our pay structure. When we found out that we were paying it correctly we changed probably end of '22, December '22, January '23. We started paying overtime at time and a half. Q. Okay. And was that a decision that you made? A. Yes. Q. Was that because of this lawsuit? A. It was because Adam convinced me that were paying incorrectly, yes. And the lawsuit certainly instigated that. Q. Okay."). This *Girsh* factor weighs in favor of granting preliminary approval of the proposed Settlement. *See Girch*, 521 F.2d at 157. Accordingly, "as it appears that defendants would not be able to withstand a greater judgment, resolution of this action through one settlement class benefits all plaintiffs by increasing the likelihood of collection." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304 (E.D. N.Y. 2015) (approving

settlement of class of restaurant workers where defendants declared they could not withstand greater judgment); *see also In re Cendant Corp. Litigation*, 264 F.3d 201, 239-241 (3d Cir. 2001).

Thus, applying these principles to the proposed Settlement instantly, if Mr. Jemison and the Class and Sub-Class Members do not settle their claims with Defendants now, there is a distinct risk that throughout the course of a trial Defendants' financial condition could worsen such that they could potentially recover significantly less than what is presented in the proposed Settlement, or even nothing at all. Therefore, that makes this factor certainly weighs in favor of approval. *See e.g. In re Prudential Ins. Co.*, 962 F. Supp. 450, 540 (D. N.J. 1997) ("*Prudential I*") (holding that "[t]here is evidence that a greater judgment likely would adversely affect Prudential's credit rating, which has already declined during these proceedings, and would, thereby, affect Prudential's ability to compete, its revenues, and its profitability."), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Accordingly, since the risk of continued litigation produces attendant risks of class certification failure, and runs the additional risk of giving Mr. Jemison and Class and Sub-Class Members an unenforceable judgment that could potentially adversely affect Defendants' ability to compete and harm the Class and Sub-Class Members, this means that the Court should preliminarily approve the Settlement in this Action.

### g) Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The proposed Settlement looks to examine the range of reasonableness of the Settlement weighed against the best possible recovery with the attendant risks to find that "[t]his inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Gen. Motors Corp.*, 55 F.3d at 806. In the *In re Gen. Motors* case, the Third Circuit Court of Appeals explained further that:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.* (citation omitted).

As discussed above, the proposed Settlement confers a substantial benefit on the Class and Sub-Class Members. Despite Defendants' wrongful actions withholding overtime compensation to which the Members were entitled, Class Counsel has secured a Settlement which provides a full reimbursement of their overtime wages, distributed on a *pro tanto* basis, and in the case of Class Members, provides a twenty-five (25%) liquidated damages penalty which confers a bonus payment on Class Members. As to the Sub-Class Members, the benefit provided by the Settlement confers a full reimbursement of their overtime wages, distributed on a *pro tanto* basis, but with no liquidated damages penalty. To that extent, courts in this district have considered the financial condition of the parties when evaluating the merits of a proposed settlement. *See e.g.*, *Koenig v. Granite City Food & Brewery, LTD.*, 2017 WL 2061408, at *5-6 (W.D. Pa. May 11, 2017). Therefore, based on analogous settlements in other similar cases, preliminary approval is warranted.

## B. THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS

Pursuant to the instant Settlement in this Action, Defendants have agreed to pay a total Settlement Amount of $133, 757.24. From that amount, the $86,663,32 comprising Fund A will be distributed and paid out to Class Members on a *pro tanto* basis in relation to the number of hours they worked during the relevant Class Period, and the $47,093.92 comprising Fund B will be distributed and paid out to Sub-Class Members on a *pro tanto* basis in relation to the number

of hours they worked during the relevant Class Period. The exact amount will be determined once all Court award fees, expenses and related payroll obligations have been deducted from Fund A. This means that each participating Class and Sub-Class Member will receive a portion of the Settlement Amount based on the amount of overtime compensation it is alleged that Defendants owed to Class and Sub-Class Members.

Furthermore, the Settlement does not unduly grant preferential treatment to Mr. Jemison. Mr. Jemison has been offered a reasonable Service Award for his efforts made in prosecuting this litigation, including the burdens, risks, and possible annoyances of bringing this action publicly. Because of Mr. Jemison's' individual efforts, participating Class and Sub-Class Members will receive significant benefits from the Settlement. Courts in the Third Circuit have regularly approved incentive payments in collective and class actions that settle claims brought under the FLSA and the PMWA when those awards are authorized by the settlement and disclosed in the class notice. *See e.g.*, *Koenig*, 2017 WL 2061408, at *5-6; *Acevedo v. BrightView Landscapes, LLC*, 2017 WL 4354809, at *2, 15 (M.D. Pa. Oct. 2, 2017) (approving $5,000 to named plaintiff and $1,000 each to five opt-in plaintiffs); *Tompkins v. Farmers Ins. Exch.*, 2017 WL 4284114, at *3, 9, 11 (E.D. Pa. Sept. 27, 2017) (approving payment of $48,500 to 11 plaintiffs); *Devlin v. Ferrandino & Son, Inc.*, 2016 WL 7178338, at *2 (E.D. Pa. Dec. 9, 2016) (payment of $7,500 to each named plaintiff and $1,000 to each opt-in plaintiff); *Graudins v. Kop Kilt, LLC*, 2017 WL 736684, at *9 (E.D. Pa. Feb. 24, 2017) (approval of service payment of $7,500 to named plaintiff); *Schaub v. Chesapeake & Del. Brewing Holdings*, 2016 WL 9776070, at *5 (E.D. Pa. Nov. 14, 2016) (approving service payment of $9,000 to named plaintiff); *Kotchmar v. Movie Tavern Partners, LP, et al.*, No. 2:15-cv-04061, at *1 (E.D. Pa. July 23, 2015) (approved service payment of $5,000 to named plaintiff).

The Parties have already agreed that Class Counsel will petition the Court for a Service Award to Mr. Jemison of $5,000. Defendants have already agreed that they will not object to this Service Award. This Service Award is reasonable in light of the work performed by Mr. Jemison is assisting the prosecution of this Action. Moreover, as noted above, this Service Award is consistent with other incentive awards granted in similar wage-and-hour collective and class action cases.

Pursuant to the proposed Settlement Agreement, prior to the Final Approval Hearing, Class Counsel will file a petition for attorneys' fees to be paid separate and apart from the Settlement Amount comprised of Fund A and Fund B, in addition to costs and expenses and Mr. Jemison's Service Award.

## V.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

### A.    THE CLASS PERIOD SHOULD BE CERTIFIED AS PROVIDED FOR IN THE SETTLEMENT AGREEMENT

Mr. Jemison asks that this Court grant the Motion for Preliminary Approval and certify the following proposed Class Member Group for settlement purposes only, pursuant to the Settlement Agreement: all current and former hourly, non-exempt employees of Stat Courier, Inc., d/b/a American Transportation Management & Design ("SCI"), Bruce Tomczak, Aaron Tomczak, and Aron Pupi, that regularly drove and operated both exempt and non-exempt vehicles while employed with SCI in Pennsylvania, and appearing as Hourly Truck Employees, Hybrid Employees, and No List Employees on the Class List, and driving vehicles weighing at or less than 10,000 pounds, on or after September 15, 2019 to December 31, 2025.

Additionally, Mr. Jemison asks that this Court grant this Motion for Preliminary Approval and certify the following proposed Sub-Class Member Group for settlement purposes only,

pursuant to the Settlement Agreement: all current and former hourly non-exempt employees of SCI, Bruce Tomczak, Aaron Tomczak, and Aron Pupi, that regularly drove and operated non-exempt vehicles while employed with SCI in Pennsylvania, and appearing as Exclusive Truck Employees on the Class List, and driving vehicles weighing over 10,000 pounds in weight, on or after September 15, 2019 to December 31, 2025. These proposed Settlement Class and Sub-Class Member Groups would be certified under Federal Rule of Civil Procedure 23. Mr. Jemison must satisfy the four elements of Rule 23(a), and one or more of the requirements of Rule 23(b). As set forth below, Mr. Jemison plainly clears this threshold.

### 1. Rule 23(a) Requirements are Satisfied Here

A named plaintiff like Mr. Jemison must establish each of the four elements of Rule 23(a) in order to certify a class under Rule 23 that provides:

> One or more members of a class may sue or be sued as representatives parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Pro. 23(a); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140-141 (3d Cir. 1998); *Prudential II*, 148 F.3d 283, 308-09 (3d Cir. 1998). Accordingly, those four (4) elements listed from Rule 23(a) are condensed as: (1) numerosity; (2) commonality; (3) typicality; and; (4) adequacy of representation. *In re Corel Corp. Secs. Litig.*, 206 F.R.D. 533, 539 (E.D. Pa. 2002). Applied here to this Settlement instantly, all four elements are satisfied, for purposes of certifying the proposed Settlement Class and Sub-Class Member Groups.

### a)  Rule 23(a)(1) - "Numerosity"

The proposed Class and Sub-Class Members in the instant Settlement are sufficiently numerous, such that joinder is not practicable. Rule 23(a)(1) requires that a class such as the Class and Sub-Class Member Groups be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). Therefore, the proposed Class and Sub-Class Member Groups have satisfied the numerosity requirement. Both the United States District Court for the Western District of Pennsylvania and the United States Third Circuit Court have recognized that there is no minimum number of plaintiffs required to meet the numerosity requirement. *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 595 (3d Cir. 2012); *Delandro v. County of Allegheny*, 2008 WL 11381924, at *2-3 (W.D. Pa. June 18, 2008) (citing *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001) (requiring in general approximately 40 plaintiffs to meet numerosity requirement); *see also In re Modafinil Antitrust Litigation*, 837 F.3d 238, 250 (3d Cir.  2016) (rejecting that numerosity requirement is met for a putative class of twenty-two (22) plaintiffs). Moreover, courts have held plaintiffs like the Class and Sub-Class Member Groups "[do] not need a magic number of claimants" nor must [plaintiffs] allege the exact number or identity of the class members." *Cohen v. Chi Title Ins. Co.*, 242 F.R.D. 295, 299 (E.D. Pa. 2007); *see also Gates v. Rohm and Haas*, 265 F.R.D. 208, 215 (E.D. Pa. 2010) (the threshold is approximately 40 class members); *See Jackson v. Southeastern Pennsylvania Trans. Auth.*, 260 F.R.D. 168, 185 (E.D. Pa. 2009) (noting that "it is proper for the court to accept common sense assumptions in order to support a finding of numerosity.").

Applying these principles instantly, here, the number of Class and Sub-Class Members indicated on the Class List in Exhibit A were over one hundred in total. A total number of plaintiffs numbering over one hundred (100) makes joinder impracticable, as the number far exceeds the

generally accepted threshold of forty (40) plaintiffs. Therefore, the individual plaintiffs comprising the Class and Sub-Class Members satisfy the numerosity requirement.

### b) Rule 23(a)(2) - "Commonality"

The proposed Class and Sub-Class Members' claims bear sufficient commonality because they all involve the same central questions of law and fact that are common to the Class and Sub-Class Members, namely: whether Defendants properly paid wages earned by its drivers, particularly Mr. Jemison, and specifically for any required overtime compensation owed by Defendants to its employees. That this specific issue is the central question to be determined in the claims of each employee means that each employee's claims bear the same common question of law and fact. Therefore, the Class and Sub-Class Members have satisfied the commonality requirement.

Under Rule 23(a)(2), a prerequisite exists for putative class actions that "there are questions of law or fact common to the class[.]" Fed. R. Civ. Pro. 23(a)(2). The United States Supreme Court expounds on the commonality element more fully, explaining that this prong requires the plaintiff to demonstrate that class members "have suffered the same injury[.]" *See Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982); *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). The *Dukes* Court clarified the issue even further by stating that "even a single common question will do.". *See Dukes*, 564 U.S. at 359. Inquiry into the commonality element focuses on the defendant's conduct. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011); *see also Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000) (finding that "[c]ommonality exists when proposed class members challenge the same conduct of the defendants."). However, finding that the commonality element is satisfied does not require that all class members share identical claims, so

long as there are common questions central to the case. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 530 (3d Cir. 2004); *Baby Neal*, 43 F.3d at 56 (noting that "[f]actual differences among the claims of the putative class members do not defeat certification"). Moreover, this Court found that "[t]he element of commonality is satisfied if 'the class members have suffered the same injury and . . . the claim depends upon a common contention that is capable of class-wide resolution." *Cotillion v. United Refining Co.*, 2013 WL 5936368, at *2 (W.D. Pa. Nov. 3, 2013) (ellipsis in original) (quoting *Savani v. Wash. Safety Mgmt. Solutions, LLC*, 2012 WL 3757239, at *3 (D.S.C. Aug. 28, 2012)). The *Dukes* Court made it clear that "[w]hat matters to class certification . . . is not the raising of common "questions" even in droves–but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Dukes* 564 U.S. at 350 (ellipsis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Applying this rationale to the claims of Class and Sub-Class Members instantly, while there is some factual distinction between the circumstances of individual Class and Sub-Class Members, all individual plaintiffs' claims carry the same central question: did the Defendants pay their required overtime wages, or not. *See* Bruce Tomczak Dep. 97:3-98:15. Stated more fully, the claims of all Class and Sub-Class Members bear the same commonality as all those Members have "suffered the same injury" *See Dukes*, 564 U.S. at 350. Accordingly, the commonality element is satisfied in the instant litigation. As noted above, even a single "common question will do", but this does not mean that the common questions within the claims must render them identical. As stated above, the United States District Court for the Western District of Pennsylvania has already stated that "[t]he element of commonality is satisfied if 'the class members have suffered the same injury and . . . the claim depends upon a common contention that is capable of class-wide

resolution." *See Cotillion*, 2013 WL 5936368, at *2. Accordingly, this makes it clear that the locus for examination isn't necessarily the questions central to Mr. Jemison and Class and Sub-Class Members' claims, but is rather the Defendants' conduct and the degree of its impact on Class and Sub-Class Members, including Mr. Jemison.

### c) Rule 23(a)(3) - "Typicality"

The proposed Class and Sub-Class Members' claims have sufficient typicality, since "the interest of the named plaintiffs aligns with the interests of the absent members." *Stewart v. Abraham*, 275 F.3d at 227. Rule 23(a)(3) requires that a named plaintiff's claims be "typical" of those of the other class members. Fed. R. Civ. Pro. 23(a)(3). The core inquiry is whether the named plaintiff and the class members allege similar wrongful conduct by the defendant, such that their claims arise from the course of events. *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008). Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as class representatives. *Baby Neal*, 43 F.3d at 57. This means that a plaintiff's claim is typical of the class claims if it challenges the same conduct that would be challenged by the class. *See e.g. Ikon Office Solutions, Inc. Litig.*, 191 F.R.D. 457, 463 (E.D. Pa. 2000). In essence, the Third Circuit Court stated that "'[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'" *Id.* (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)).

Typicality is demonstrated where a plaintiff can "show that two issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as those of the unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 810 n. 36 (3d Cir. 1984). As one district court in this Circuit aptly noted in granting class certification to a PMWA claim,

"the principal questions presented by the suit go to [defendant's] corporate policies. The controversy here is whether those policies violate the PMWA and whether those policies were applied to Plaintiff and other potential class members." *Soles v. Zartman Constr., Inc.*, 2016 WL 3458395, at *5-6 (M.D. Pa. June 24, 2016). That is precisely the case at hand in this instant Settlement of Class and Sub-Class Members' claims - whether Defendants' corporate policies complied with applicable law regarding the use of the exemption within the Federal Motor Carrier Safety Act abrogating an employer's obligation to pay overtime and "whether those policies were applied to Mr. Jemison and other potential class members." *Id.*

Applied here, Mr. Jemison's' claims are typical of those asserted by both the Class and Sub-Class Members, since all of the claims arise from Defendants' uniform policy of failing to pay non-exempt Hourly Truck Employees, Hybrid Employees, and No List Employees required overtime wages, as well as Exclusive Truck Employees, all in violation of the PMWA. Unlike the Court in *Dukes*, where the named plaintiff's individual claims bore no relationship to the class claims, Mr. Jemison's wage claims are common to all and form the central theory of liability in this case. Moreover, Mr. Jemison himself is a member of the Settlement Class Members entitled to a share of proceeds from Fund A. That he may also assert additional claims outside the scope of the class does not defeat typicality where, as here, the class claims arise from the same alleged unlawful practices. *Delandro*, 2008 WL 11381924, at *3. Therefore, the typicality requirement of Rule 23(a)(3) is satisfied.

### d) Rule 23(a)(4) - "Adequacy"

The proposed Class and Sub-Class Members claims bear sufficient adequacy, because the named plaintiff in Mr. Jemison bears no conflicts of interest with the other absent Class and Sub-Class Members. Under the terms of Rule 23(a)(4), "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). This adequacy requirement ensures that the class representative and class counsel do not have conflicts of interest that will inhibit them from vigorously prosecuting the claims on behalf of the class. *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007); *Delandro*, 2008 WL 11381924, at *4. In essence, the "adequacy of representation inquiry encompasses two distinct inquiries designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012). The first prong of the test evaluates whether the named plaintiff has any interests antithetical to the Settlement Class, and the second prong looks at Class Counsel's capabilities and performance under the terms of Rule 23(a)(4). *See New Directions*, 490 F.3d at 313; *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Here, Mr. Jemison meets the first prong. He has no interests in opposition to Class and Sub-Class Members with their positions aligned. Moreover, Class Counsel has the necessary capabilities under Rule 23(a)(4), so adequacy is met.

Applying the foregoing principles to this Settlement instantly, Mr. Jemison and Class Counsel satisfy the adequacy standard. Mr. Jemison is a former employee of Defendants and constitutes part of the Class Member Group entitled to a share of the proceeds from Fund A, whose claims are aligned with those of the other Class and Sub-Class Members. While the nature of Mr. Jemison's claims may include some that are not shared by other Class and Sub-Class Members, such as retaliatory termination, the majority of his claims still run coextensively with the remaining Class and Sub-Class Members. Moreover, there is no indication of any conflict between Mr. Jemison and absent Class and Sub-Class Members. *See Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 625-26 (1997) (noting that the adequacy inquiry seeks to "uncover conflicts of interest between named parties and the class they seek to represent."). Likewise, Class Counsel similarly meets the adequacy requirement. Counsel has a great deal of experience litigating and settling wage-and-hour class actions and possesses the knowledge and resources necessary to represent the class competently. *New Directions*, 490 F.3d at 313 (finding the class counsel "need only possess a minimal degree of knowledge necessary . . ."). Here, both Mr. Jemison's and Class Counsel have demonstrated that the adequacy requirement of Rule 23(a)(4) is satisfied.

### 2. The Proposed Settlement Class Should be Certified under Rule 23(b)

Under Rule 23(b), a class action requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3). Pursuant to the terms of Rule 23(b), when looking at certification of a class action, the court looks to find that common questions of law or fact predominate over individual issues and a class action is superior to other methods of resolving the controversy–in other words, testing for the elements of predominance and superiority. *See Amchem Prods. Inc.*, 521 U.S. at 594, 623 (1997); *Prudential II*, 148 F.3d at 316. Regarding the predominance element, this "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc.*, 521 U.S. at 623. In addition, the superiority element requires the court to test the "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *Prudential II*, 148 F.3d at 316. Applying these standards to the Settlement Class and Sub-Class Member Groups here, Mr. Jemison meets the requirements of predominance and superiority to justify the certification of the Class and Sub-Class Member Groups for purposes of settlement instantly.

First, applying the predominance factor to this Settlement demonstrates that common questions of law and fact predominate the claims of Mr. Jemison and the Class and Sub-Class Members. When common issues point to significant aspects of a case that can be readily resolved for all Class and Sub-Class Members through a single adjudicatory determination of the claims at issue, then this demonstrates a clear rationale for handling the claims on a representative basis rather than on an individual basis. *Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001), *cert. denied*, 534 U.S. 973 (2001); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34 (3d Cir. 2004) (finding that predominance and superiority exists within the claims at issue where litigating each claim separately would be duplicative, inefficient, and burdensome for the courts and the parties).

Applied here, there is no indication that any of the Class or Sub-Class Members have filed their own lawsuits in their individual capacities or otherwise. Moreover, there are no apparent case management difficulties. Class and Sub-Class Members' claims arise out of the same conduct of Defendants applying its policies and procedures that are alleged to be wrongful in Mr. Jemison's claims. Additionally, Settlement Class and Sub-Class Members' claims seek remedy of common legal issues – namely, the payment of required overtime compensation for all hours worked. Therefore, this demonstrates Mr. Jemison's position that these common legal issues present common operative facts and questions of law that predominate over any factual variations or distinctions.

Second, in application of the superiority factor in the context of a Rule 23 settlement certification, the court looks to determine whether this Settlement is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3)(A)-(D); *see also Amchem Prods., Inc.*, 521 U.S. at 615. Rule 23(b)(3) outlines those factors evaluated

under the rule as including: (1) individual class members' interests in controlling separate actions; (2) the extent of existing related litigation; (3) the desirability of concentrating the litigation in one forum, and; (4) the likely difficulties in managing a class action. Fed. R. Civ. Pro. 23(b)(3)(A)-(D). This Settlement makes it clear that if the Class and Sub-Class Member Groups are not certified here, many potential Class and Sub-Class Members will go uncompensated for Defendants' alleged wrongdoing. *See e.g.*, *MacNeal v. Columbine Exploration Corp.*, 123 F.R.D. 181, 187 (E.D. Pa. Dec. 1, 1988) (finding superiority where individual class members "have small interests, and individually they might not have the wherewithal to bring suit to protect their individual rights.").

Applied here, this case demonstrates the superiority factor is satisfied because the individual class members' interests in controlling separate actions dictate the propriety of a class action, the extent of existing related litigation and the desirability of concentrating that litigation in one forum, as well as the attendant difficulties bringing one, demonstrates that the superiority element is satisfied. This Action involves claims from well over one hundred (100) people. Involving claims from that number of people and adjudicating them in separate actions would be needlessly duplicative, inefficient, and burdensome, while treatment of the Class and Sub-Class Member Groups as certified class groups pursuant to a settlement promotes "economies of time, effort, and expense" and reduces the risk of inconsistent outcomes. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34 (3d Cir. 2004). As stated above, there are no indications of any individual or representative lawsuits brought by any Class and/or Sub-Class Member, nor is there even strong incentive to bring one. Concentrating the litigation in the Western District of Pennsylvania is logical and efficient, this Court is already familiar with the facts and claims. Further, Class Counsel has proposed a straightforward notice and distribution process, so this Action presents no apparent

case management difficulties. Moreover, requiring all of the Class and Sub-Class Members to file individual lawsuits would needlessly waste judicial resources in the event of litigation, because it is highly likely that each lawsuit would involve exactly the same evidence and claims regarding Defendants' alleged wrongdoing. Therefore, resolving the claims of Settlement Class and Sub-Class Members in a single consolidated settlement proceeding is far superior to resolution on an individual basis. The Settlement Agreement provides the Class and Sub-Class Members with an ability to obtain prompt and certain relief with a predictable pattern of consistent results for Class and Sub-Class Members, whereas individualized litigation carries with it great uncertainty, risk, and costs, and provides no guarantee that any individual Class and/or Sub-Class Member that are owed required overtime compensation wages will obtain necessary and timely relief when litigation concludes. The proposed Settlement also relieves the judicial burdens that would be caused by unnecessary and needlessly duplicative adjudication of the same issues. Furthermore, strictly for settlement purposes only, Defendants do not oppose Rule 23 class certification of the Settlement Class and Sub-Class Member Groups.

Finally, as set forth in more detail in the Settlement Agreement, even if a Class and/or Sub-Class Member does not participate in the Settlement, unless they affirmatively file an objection and/or opt-out of the Action, they will be deemed to have released their claims brought under the FLSA and the PMWA on their behalf in this Action. The Class Notice apprises the Settlement Class Members of this provision and the Claim Form states in full the releases contained in the Settlement Agreement. Moreover, as set forth in the Settlement Agreement, the claims brought under the FLSA and the PMWA that are released pursuant to the Settlement do not include any individual claims for employment discrimination or retaliatory termination which might be

brought by Class and Sub-Class Members in their individual capacities. Therefore, this court should enter an order certifying the Settlement Class for settlement purposes only.

### B.  THE RELEASE OF FLSA CLAIMS IS APPROPRIATE

As set forth in more detail in the Settlement Agreement, and described in the Initial Notice to Class Members, unless Class Members affirmatively opt-out  of this Action and/or file an objection, they will be entitled to a share of the proceeds, and need not take any action, aside from making  reasonable efforts to contact the Claims Administrator, and will be deemed to have released their FLSA claims asserted against Defendants. A release of claims relating to the FLSA is permissible because the language of the FLSA addresses the claims brought on behalf of the Class and Sub-Class Members, although class action settlements have been approved that included impermissibly broad language releasing all claims under the FLSA. This was recognized in the Fifth Circuit Court where the Court looked at exclusions of FLSA claims and found that the FLSA permits state courts to supervise and approve an opt-out class action settlement releasing FLSA claims. *Richardson v. Fargo Bank, N.A.*, 839 F.3d 442, 451 (5th Cir. 2016).

Evaluating the instant Settlement Agreement under this proposition, it is clear that this Court has authority to approve a class action settlement that releases all FLSA claims including those asserted by Mr. Jemison in this Action. It is equally clear that all claims brought under the FLSA in this Action are released along with any other wage-and-hour claims that might be brought under the FLSA, but do not include any individual employment claims for harassment for retaliatory termination. Therefore, the Action only releases wage-and-hour claims that can be brought in this case. Accordingly, the proposed Settlement satisfies the applicable prerequisites of fairness to the Class and Sub-Class Members and warrants preliminary approval and that the Class Notice should also be approved.

### C.  THE RELEASE OF PMWA CLAIMS IS APPROPRIATE

Similar to that set forth above in relation to FLSA claims, a release of claims asserted under the PMWA is permissible because the proposed Settlement is fair, reasonable, and adequate in providing substantial monetary benefit to Class and Sub-Class Members of the overtime owed to them by Defendants. Moreover, the proposed Settlement meets the applicable standard at the preliminary approval stage to determine whether the "proposed settlement disclosed grounds to doubt its fairness other obvious deficiencies . . ." *In re National Football League*, 961 F. Supp. 2d at 715. Those bases to doubt the fairness of a proposed agreement include unduly preferential treatment of class representative or particular class members, as well as excessive attorneys' fees. *Id.* As stated above, the Third Circuit looks at four different factors to ensure fair and adequate protection of the class to find that "an initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at an arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation, and; (4) only a small fraction of the class object." *In re National Football League*, 961 F. Supp. 2d at 715 (quoting from *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995)). Accordingly, if the court finds that these factors are met, there is an initial presumption of fairness. *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 576 (E.D. Pa. 2003) ("*In re Linerboard II*") (citing *In re Gen. Motors Corp.*, 55 F.3d at 785).

Applied here, the proposed Settlement releasing the PMWA claims asserted on behalf of Class and Sub-Class Members should be granted because the release is permissible. Looking at the proposed Settlement under the factors listed above, Class Counsel and Defense Counsel negotiated the proposed Settlement at an arm's length and as the product of several mediation sessions, did so following completion of discovery, and without any objections from class

48

members while Class Counsel bears significant experience in class actions. Therefore, since these factors demonstrate the release of PMWA claims is permissible and proper, this Court should grant preliminary approval of the Class and Sub-Class Member Groups.

## VI.    THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED

The Court should approve the Initial Notice to Class Members and the Initial Notice to Sub-Class Members because the Notices are appropriate under Rule 23, since they provide clear, adequate, and timely notice to all Class and Sub-Class Members. Accordingly, these Notices comply with Rule 23(e) and fully satisfy due process and so should be approved by the court. By its terms, "Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . ." Manual for Complex Litigation, § 21.312. The proposed Settlement's notice "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) ("*Prudential III*") (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) (finding that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections."). Moreover, by the terms of Rule 23(c), "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion, and; (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. Pro. 23(c)(2)(B).

Applying this understanding of the notice requirements to the Settlement under consideration for preliminary approval, this Court should approve the Initial Notice to Class Members and the Initial Notice to Sub-Class Members as they provide clear, adequate, and timely notice of the Action to Class and Sub-Class Members. In addition, this Court should approve the Notices because they describe in plain, neutral language: (1) the nature of the action; (2) the definition of the Class and Sub-Class Member Groups; (3) the claims asserted; (4) the material terms of the Settlement, including the nature and structure of Fund A and Fund B and the method of distributing the proceeds from those Funds; (5) the legal options available to Class and Sub-Class Member Groups, including how to participate, opt-out, or object; (6) the procedure for submitting a claim to proceeds from Fund A by Class Members by making efforts to contact the Settlement Administrator, and for submitting a claim to proceeds from Fund B by Sub-Class Members by submitting a Claims Form and a Consent to Join Settlement Form; (7) the nature of any attorneys' fees and costs, as well as named representative plaintiff Service Awards, and that the issue of attorneys' fees and costs will be resolved in the future; (8) the date, time, and location of the Final Fairness Hearing. Instantly, the form and method of notice satisfies all due process considerations and further requirements under Rule 23(e)(1). Notice by mail satisfies Rule 23(c)(2)(B)'s "best notice practicable" standard, because "[n]otice by mail provides such 'individual notice to all members' in accordance with Rule 23(c)(2), and where the names and addresses of the class members are easily ascertainable, individual notice through the mail is 'clearly the 'best notice practicable.'" *Fein v. Ditech Fin., LLC*, 2017 WL 4284116, *6, 11 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974)). The notice plan is structured and

comprehensive, in that it provides for a consistent schedule of notice being provided in accordance with the schedule outlined in the Settlement Agreement. The mailing addresses that will be utilized will be obtained from SCI's payroll records and, upon receipt, the Settlement Administrator shall utilize the National Change of Address ("NCOA") system before mailing to update the addresses of the individuals identified in the Class List, in addition to skip-tracing all returned mail and promptly remailing it. In addition to mailing the notice, The Settlement Administrator will maintain the Settlement Website until the Settlement Agreement is fully administered and that will provide current information to Settlement Class and Sub-Class Members.

The notice plan described above, including the arrangements for direct mailing and the creation of the internet Settlement Website, is intended to fully inform the Settlement Class and Sub-Class Members of this Action, and the terms of the proposed Settlement and the information needed to make informed decisions about their rights under the Settlement. The Initial Notice to Class Members and the Initial Notice to Sub-Class Members is wholly consistent with Rule 23, and the Notices will adequately advise Class Members and Sub-Class Members, and the Notices will adequately advise Class and  Sub-Class Members of: (1) the nature of the action; (2) the definitions of Class and Sub-Class Member Groups and the associated terms; (3) the claims asserted by Mr. Jemison; (4) the Settlement's material terms; (5) the available legal options; (6) the claims submission process for Class and Sub-Class Members; (7) the resolution of attorneys' fees and costs and Mr. Jemison's Service Award, and; (8) the Final Fairness Hearing's date, time, and location. Accordingly, the Initial Notice to Class Members and the Initial Notice to Sub-Class Members provide sufficiently specific information on the date, time and place of the Final Fairness Hearing and describes the procedures, as well as the deadlines, for objecting to the Settlement, the proposed distribution of the proceeds from Fund A and Fund B comprising the total Settlement

Amount, the future resolution of attorneys' fees and costs, the reimbursement of expenses, and Mr. Jemison's Service Award. Therefore, this Court should approve the form of the Initial Notice to Class Members and the Initial Notice to Sub-Class Members.

## VII.    J.P. WARD & ASSOCIATES, LLC, SHOULD BE APPOINTED AS CLASS COUNSEL TO THE SETTLEMENT CLASS AND SUB-CLASS MEMBER GROUPS

The terms of Rule 23(a)(4) require that "[t]he representative parties fairly and adequate protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). The object of the adequacy prong is to first "test the qualifications of counsel to represent the class[,]" and second, to "uncover conflicts of interest between named parties and the class they seek to represent." *Prudential II*, 148 F.3d at 312. Appointing J.P. Ward & Associates as Class Counsel for the Class and Sub-Class Member Groups in the instant Action will satisfy both interests of the adequacy prong.

Under Rule 23(g), the Court is required to examine the extent of the putative Class Counsel's capabilities and resources to determine whether they have the capacity to provide adequate representation to the Class and Sub-Class Member Groups. Fed. R. Civ. Pro. 23(g). Specifically, Rule 23(g) requires the court in appointing Class Counsel to consider "(i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge.

Appointing J.P. Ward & Associates as Class Counsel shall easily satisfy those obligations. Critically, Mr. Jemison is represented by counsel that is experienced in class action litigation, and Class Counsel's work in this case on Mr. Jemison's behalf and on the behalf of the other absent Class and Sub-Class Members has been substantial. Class Counsel has expended significant time

and energies and devoted substantial resources and effort to identify, investigate, and prosecute the claims in this Action.

Moreover, Class Counsel Joshua P. Ward, Esq. has substantial experience moving for preliminary approval in complex class actions. In *Bowen v. UPMC*, Mr. Ward represented named plaintiffs Vince and Lou Ranalli alleging that a serious data breach event from UPMC's record keeping systems occurred, resulting in the compromised personal information of approximately 36,000 people. *Bowen v. UPMC*, Compl., GD-21-2075, Doc. No. 1 (Mar. 9, 2021). After Defendants' preliminary objections were defeated, Mr. Ward on behalf of the Ranallis filed the operative Complaint while the parties negotiated settlement. *Id.* The matter concluded with Defendants agreeing to pay up to $450,000 in damages. *Bowen v. UPMC*, Mem. Law in Supp. Pl.'s. App. for Atty. Fees and Costs, GD-21-2075, Doc. No. 21, 10 (Sept. 1, 2022). In pursuit of those results, Mr. Ward expended 285.5 hours working on associated litigation, as well as time spent in mediation and drafting the Settlement Agreement documentation. *Id.* Moreover, filings in *UPMC* demonstrate Mr. Ward has extensive experience in class actions as well as data breach and privacy litigation. *Id.* The results obtained in *UPMC* where each class member received up to $2,500 in payments resulting from the litigation show Class Counsel has extensive experience and a depth of knowledge in class actions. Accordingly, Mr. Ward has extensive knowledge and experience sufficient to satisfy Rule 23(g).

Additionally, Class Counsel Mark D. Nolfi, Esq. has experience in litigation and pursuing civil actions. Mr. Nolfi has been a duly admitted attorney in the State of Pennsylvania and the District of Columbia for the last eight (8) years, having argued before multiple Courts of Common Pleas and the United States District Court for the Western District of Pennsylvania. Therefore, Mr. Nolfi has sufficient experience pursuant to Rule 23(g).

In addition, as Class Counsel, Mr. Ward has had to expend additional resources to organize and collate the business and payroll record produced by Defendants. Accordingly, this resulted in the expenditure of additional resources in order to identify and investigate the claims asserted in this Action. As Class Counsel, Mr. Ward has also devoted substantial personal time, energy, and resources to this case, including: (i) developing the factual basis of the claims; (ii) preparing a detailed and well-structures Complaint; (iii) conducting formal discovery; (iv) engaging in good-faith participation in mediation as well as vigorous settlement negotiations with Defendants. Moreover, as Class Counsel Mr. Ward has substantial experience, both in his individual capacity and collectively through the resources of J.P. Ward & Associates, in handling class actions, and other complex employment litigation involving the claims of the type asserted here. As Class Counsel, Mr. Ward's extensive efforts taken prosecuting this case together with their background and experience in employment and wage-and-hour litigation, including involving claims brought here under the FLSA and the PMWA.

In addition, Mr. Nolfi's efforts to undertake drafting the Settlement Agreement, as well as the attendant Initial Notices and this instant Motion demonstrate his sufficient knowledge and experience under Rule 23(g).

Therefore, as Class Counsel Mr. Ward's extensive knowledge and experience, as well as Mr. Nolfi's efforts, in prosecuting this case together with his background and experience in FLSA and PMWA litigation satisfies the requirements under Rule 23(g). In addition, Defendants do not dispute or oppose Class Counsel's qualifications. Accordingly, this Court should appoint Joshua P. Ward, Esq. and Mark D. Nolfi, Esq. as Class Counsel.

## VIII.    CONCLUSION

Based on the foregoing, the proposed Settlement provides a fair, reasonable and adequate award to Mr. Jemison and the Class and Sub-Class Members on whose behalf he brings these claims, and puts an end to this Action. This means that this Court should approve the notice plan and that Mr. Jemison's Motion for Preliminary Approval should be granted. Moreover, the proposed Settlement Class and Sub-Class Member Groups satisfy the requirements of Rules 23(a) and Rule 23(b)(3) and should be certified as appropriate class groups for the Settlement. Accordingly, based on the foregoing, Mr. Jemison respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) certify, for settlement purposes only, Mr. Jemison's claims pursuant to Fed. R. Civ. Pro. 23(b); (3) order that the present Action be stayed pending the Court's decision on final approval of the Settlement; (4) approve the proposed claims process, incorporated in the proposed Initial Notice to Class Members and the Initial Notice to Sub-Class Members; (5) approve and authorize the mailing of the Initial Notice to Class Members and the Initial Notice to Sub-Class Members, and; (6) set a date for the Final Approval Hearing.

**[SIGNATURE BLOCK APPEARS ON THE FOLLOWING PAGE]**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: July 18, 2025                    By:  _/s/ Joshua P. Ward_____
                                            Joshua P. Ward (Pa. I.D. No. 320347)
                                            Mark D. Nolfi (Pa. I.D. No. 323592)

                                            J.P. Ward & Associates, LLC
                                            The Rubicon Building
                                            201 South Highland Avenue
                                            Suite 201
                                            Pittsburgh, PA 15206
                                            Direct: (412) 545-3015
                                            jward@jpward.com

                                            *Class Counsel for Named Plaintiff and*
                                            *On Behalf of the Class and Sub-Class Member*
                                            *Groups*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18 day of July, 2025, that a true and correct copy of foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: July 18, 2025                    By:  /s/ Joshua P. Ward
                                       Joshua P. Ward (Pa. I.D. No. 320347)
                                       Mark D. Nolfi (Pa. I.D. No. 323592)

                                       J.P. Ward & Associates, LLC
                                       The Rubicon Building
                                       201 South Highland Avenue
                                       Suite 201
                                       Pittsburgh, PA 15206
                                       Direct: (412) 545-3015
                                       jward@jpward.com

                                       *Class Counsel for Named Plaintiff*
                                       *On Behalf of the Class and Sub-Class Member*
                                       *Groups*